**Steven A. Kraemer,** OSB No. 882476
E-mail:  skraemer@cisoregon.org
**KRAEMER & LEWIS**
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

<u>Of Attorneys for Defendant City of Turner Police Department</u>

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **LARISSA WHITE**, an individual, | No. 6:18-cv-00550-MK |
| Plaintiff, | **DEFENDANT CITY OF TURNER POLICE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **CITY OF TURNER POLICE CHIEF DON TAYLOR**, by and through the **CITY OF TURNER POLICE DEPARTMENT**, a political subdivision of **TURNER, OREGON**, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

# TABLE OF CONTENTS

MOTION ............................................................................................................... 1

LEGAL MEMORANDUM ..................................................................................... 1

I.    INTRODUCTION ...................................................................................... 1

II.    STATEMENT OF MATERIAL FACTS .................................................... 3

    A.    Background .................................................................................... 3

    B.    Plaintiff Responds to City Administrator Sawyer's Concern in January of 2016 Regarding Building Security ....................................................................... 4

    C.    Plaintiff Complains About the Condition of Chief Taylor's Police Vehicle ............. 5

    D.    Plaintiff Keeps a Private Log of Alleged Policy Violations By Chief Taylor and TPD ......................................................................... 5

    E.    In March of 2017, Plaintiff is Investigated For Time Entry Discrepancies .............. 7

    F.    Plaintiff's Union Grieves Her Discharge and a Settlement is Reached Between the City, Plaintiff, and Her Union ........................................................ 10

III.    SUMMARY JUDGMENT STANDARD .................................................. 10

IV.    LEGAL MEMORANDUM ....................................................................... 11

    A.    Plaintiff's Claims Fail as a Matter of Law Because She Released Her Right to Bring Any Claims Arising from Her Discharge When She Signed and Accepted the Settlement Agreement ........................................................ 11

    B.    Plaintiff's First Amendment Retaliation Claim Fails Because She Made No Protected Speech, Any Allegedly Protected Speech was Made in Her Capacity as a Public Employee, and the Discharge Decision was Unrelated to Any Protected Speech ........................................................ 13

        1.    Plaintiff Did Not Speak on a Matter of Public Concern ................................ 14

        2.    To the Extent Plaintiff Spoke At All, It Was in Her Capacity as a Public Employee .......................................................... 18

        3.    Plaintiff Cannot Establish that Her Allegedly Protected Speech was a Substantial or Motivating Factor in Her Termination ................................... 20

**KRAEMER & LEWIS**
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

a.   Plaintiff Cannot Establish Temporal Proximity Between Her Alleged Speech on a Matter of Public Concern and her Termination ................ 20

b.   There Is No Evidence that Taylor or Sawyer Expressed Opposition to Plaintiff's Speech ................................................................................. 21

c.   The City Had a Basis for Discharge ...................................... 22

C.   Plaintiff's First Amendment Retaliation Claim Based on a *Monell* Policy Violation Fails as a Matter of Law ........................................................ 23

D.   Plaintiff's Whistleblower Claim Fails as a Matter of Law ..................................... 26

1.   Plaintiff Made No "Disclosures" of Wrongdoing Within the Meaning of ORS 659A.203 .......................................................... 27

2.   Plaintiff Cannot Establish a Causal Link Between Any Alleged Protected Activity and Her Discharge .......................................... 30

V.   CONCLUSION .................................................................................................. 31

**Page ii –  DEFENDANT CITY OF TURNER POLICE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT**

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

# TABLE OF AUTHORITIES

**Cases**

*Barone v. City of Springfield*, 902 F.3d 1091 (9th Cir. 2018) ...................................................... 14

*Barrier v. City of Dalles*, No. 3:18-CV-1084-AC, 2019 WL 2707519 (D. Or. June 4, 2019),
   *report and recommendation adopted sub nom. Barrier v. City of the Dalles*, No. 3:18-CV-
   01084-AC, 2019 WL 2648808 (D. Or. June 27, 2019) ........................................................... 28

*Bjurstrom v. Oregon Lottery,* 202 Or. App. 162, 120 P.3d 1235 (2005) ................................ 27, 28

*City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985).................................................................... 25

*Clark County School Dist. v. Breeden*, 532 U.S. 268 (2001) ....................................................... 20

*Clarke v. Multnomah County*, No. CV-06-229-HU, 2007 WL 915175 (D. Or.
   March 23, 2007).................................................................................................................... 28, 29

*Coghlan v. Am. Seafoods Co.,* 413 F.3d 1090 (9th Cir. 2005) ...................................................... 23

*Coszalter v. City of Salem,* 320 F.3d 968 (9th Cir. 2003)................................................................ 14

*Dahlia v. Rodriguez,* 735 F.3d 1060, 1067 (9th Cir. 2013) ..................................................... 13, 20

*Desrochers v. City of San Bernardino*, 572 F.3d 703 (9th Cir. 2009) ................. 14, 15, 17, 18, 31

*Edwards v. Times Mirror Co.,* 102 Or. App. 440, 795 P.2d 564 (1990) ...................................... 12

*Eng v. Cooley,* 552 F.3d 1062 (9th Cir. 2009) ................................................................... 13-15, 19

*Estes v. Lewis and Clark College,* 152 Or. App. 372, 381, 954 P.2d 792 (1998) ........................ 31

*Fox v. Josephine Cty.*, No. 09-3067-CL, 2010 WL 3118703 (D. Or. Aug. 3, 2010) ................... 19

*Freitag v. Ayers,* 468 F.3d 528 (9th Cir. 2006)........................................................................ 19, 20

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ...................................................................... 14, 17, 20

*German v. Eudaly*, No. 3:17-CV-2028-MO, 2018 WL 3212020 (D. Or. June 29, 2018) ............ 24

*Graves v. Tulleners,* 205 Or. App. 267, 134 P.3d 990 (2006) ...................................................... 12

*Hagen v. City of Eugene*, 736 F.3d 1251 (9th Cir. 2013) ............................................................. 19

*Hall v. Douglas Cty.*, 226 Or. App. 276, 203 P.3d 360 (2009)..................................................... 28

*Handte v. Storey Cty.*, 461 F. App'x 591 (9th Cir. 2011) ............................................................. 16

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

*Hardie v. Legacy Health Sys., Inc.*, 167 Or. App. 425, 6 P.3d 531 (2000)................................... 31

*Harper v. Wallingford*, 877 F.2d 728 (9th Cir. 1989)................................................................... 11

*Howard v. City of Coos Bay*, No. 09-6257-AA, 2011 WL 899619 (D. Or. Mar. 14, 2011) ........ 29

*Hyland v. Wonder,* 972 F.2d 1129 (9th Cir. 1992) ......................................................................... 16

*Jones v. McDaniel*, 717 F.3d 1062 (9th Cir. 2013)......................................................................... 11

*Karl v. City of Mountlake Terrace,* 678 F.3d 1062 (9th Cir. 2012)................................................. 15

*Keller v. City of Portland*, No. CV-98-263-ST, 1998 WL 1060222 (D. Or.
     Nov. 13, 1998) ......................................................................................................... 2, 23, 27

*Kennedy v. Bremerton Sch. Dist.*, 869 F.3d 813 (9th Cir. 2017) ............................................ 19, 20

*Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741 (9th Cir. 2001) ............................. 20

*Lindgren v. Berg, 307* Or. 659, 772 P.2d 1336 (1989) .................................................................. 11

*Lindsey v. Clatskanie People's Util. Dist.*, 140 F. Supp. 3d 1077 (D. Or. 2015) ................... 28, 29

*Long v. Cnty. of Los Angeles,* 442 F.3d 1178 (9th Cir. 2006) ....................................................... 25

*Los Angeles v. Heller*, 475 U.S. 796 (1986) ................................................................................. 24

*Lytle v. Carl,* 382 F.3d 978 (9th Cir. 2004) .................................................................................. 24

*LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009).................................................... 11

*Maier v. Pac. Heritage Homes, Inc.*, 72 F. Supp. 2d 1184 (D. Or. 1999) .................................... 12

*Manatt v. Bank of America, NA*, 339 F.3d 792 (9th Cir. 2003) .................................................... 21

*McDade v. West*, 223 F.3d 1135 (9th Cir. 2000) ......................................................................... 26

*Mendez v. County of Los Angeles*, 897 F.3d 1067 (9th Cir. 2018) ............................................... 14

*Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975 (9th Cir. 2006)................................................. 11

*Monell v. New York Dep't of Social Services*, 436 U.S. 658 (1978) ........................................24-25

*Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274 (1977)................. 14

*Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924 (9th Cir. 2001) ..................................... 25

*Neighorn v. Quest Health Care,* 870 F. Supp. 2d 1069 (D. Or. 2012) ......................................... 27

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

*Odima v. Westin Tucson Hotel Co.*, 991 F.2d 595 (9th Cir. 1993)................................................. 22

*In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) ........................................................ 10

*Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992) ......................................................................... 25

*Patterson v. Am. Med. Systems,* 141 Or. App. 50, 916 P.2d 881, *review denied,*
    324 Or. 229, 925 P.2d 907 (1996) ......................................................................................... 11

*Pickering v. Board of Education,* 391 U.S. 563 (1968)................................................................. 14

*Plumeau v. School Dist. # 40 Cnty. of Yamhill,* 130 F.3d 432 (9th Cir. 1997)............................. 24

*Posey v. Lake Pend Oreille School Dist. No. 84,* 546 F.3d 1121 (9th Cir. 2008).................. 18, 19

*Ristau v. Wescold, Inc.,* 318 Or. 383, 387, 389, 868 P.2d 1331 (1994)................................. 11, 12

*Ritchie v. Staton by & through Multnomah Cty. Sheriff's Office*, No. 03:17-CV-00844-AC,
    2018 WL 2276241 (D. Or. Mar. 28, 2018), *report and recommendation adopted,*
    No. 3:17-CV-00844-AC, 2018 WL 2248450 (D. Or. May 16, 2018) ...................................... 17

*Robinson v. York,* 566 F.3d 817 (9th Cir. 2009) .......................................................................... 15

*Roe v. City and Cnty. of San Francisco,* 109 F.3d 578 (9th Cir. 1997)........................................ 15

*Sanchez v. Purina Animal Nutrition, LLC*, No. 03:13-CV-00864-HZ, 2015 WL 667619
    (D. Or. Feb. 13, 2015)............................................................................................................. 23

*Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994)............................................................................. 24

*Shultz v Multnomah Cty.*, No. 08-CV-886-BR, 2009 WL 1476689 (D. Or. May 27, 2009)........ 28

*Sluimer v. Verity, Inc.*, 606 F.3d 584 (9th Cir. 2010) ................................................................. 11

*Swanberg v. Canby*, No. 3:14-CV-00882-HZ, 2015 WL 5254373 (D. Or. Sept. 9, 2015) ......... 26

*Thomas v. City of Beaverton,* 379 F.3d 802 (9th Cir. 2004)........................................................ 14

*Thompson v. Los Angeles,* 885 F.2d 1439 (9th Cir. 1989)............................................................ 25

*Trevino v. Gates,* 99 F.3d 911 (9th Cir. 1996) ............................................................................. 25

*Turner v. City & County of San Francisco*, 788 F.3d 1206 (9th Cir. 2015)............................ 16, 18

*Van Ort v. Estate of Stanewich*, 92 F.3d 831 (9th Cir. 1996) ...................................................... 25

*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002) ..................................... 11, 21

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

*Walcutt v. Inform Graphics, Inc.,* 109 Or. App. 148, 817 P.2d 1353 (1991) ........................ 11, 12

*Washington Mut. Ins. v. United States*, 636 F.3d 1207 (9th Cir. 2011)......................................... 10

*West v. Atkins*, 487 U.S. 42 (1988) ................................................................................................ 13

**Statutes and Rules**

5 U.S.C. § 2302 .............................................................................................................................. 28

42 U.S.C. § 1983 .............................................................................................................................. 1

ORS 30.265 ..................................................................................................................................... 27

ORS 162.235 ................................................................................................................................... 29

ORS 659A.203 ......................................................................................................................... 2, 26, 27

Fed. R. Civ. P. 17(b)(3) .................................................................................................................... 1

Fed. R. Civ. P. 56(a) ....................................................................................................................... 10

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

## LOCAL RULE 7-1 CERTIFICATION

Pursuant to LR 7-1, the undersigned certifies that on November 18, 2019, defendant City of Turner Police Department's counsel conferred with plaintiff's counsel and discussed the claims, defenses, and issues that are the subject of defendant's motion.  The parties were unable to resolve the subject matter of this motion and the Court's ruling is necessary on this matter.

## MOTION

Pursuant to Federal Rule of Civil Procedure 56 and Local Rules 56-1 and 7-1(b), defendant City of Turner Police Department (TPD) moves the Court for an order granting summary judgment on both of plaintiff's claims.  In support of this motion, pursuant to LR 7-1(c), TPD relies on the Legal Memorandum set forth below, the Declaration of Steven A. Kraemer with attached exhibits, and the pleadings on file herein.  TPD also joins in co-defendant Don Taylor's motion for summary judgment and expressly incorporates his motion and arguments to the extent applicable herein.

## LEGAL MEMORANDUM

### I.  INTRODUCTION

Plaintiff Larissa "Lacey" White alleges two claims against TPD: (1) a "violation of federal constitutional rights" under 42 U.S.C. § 1983 and (2) whistleblowing under ORS 659A.203. (Compl. ¶¶ 42-59).  Plaintiff brings Count 1 of the Section 1983 claim for alleged "violation of right to free speech – public employee."  (Compl. ¶¶ 42-48).  Count 2 for alleged "denial of rights freedom of speech" is a *Monell* claim against TPD based on "official policy, practice, or custom." (Compl. ¶¶ 49-53).

As a threshold matter, plaintiff sued the wrong defendant, TPD, instead of the City of Turner.  (4/23/18 Acceptance/Acknowledgement of Service on City of Turner Police Chief Don Taylor and City of Turner Police Department – Docket No.  11).  Under Fed. R. Civ. P. 17(b)(3), state law determines whether a particular entity has the capacity to be sued.  As discussed below, city police departments are not separate entities and cannot be sued under federal civil rights laws or the Oregon Tort Claims Act.  *Keller v. City of Portland*, No. CV-98-263-ST, 1998 WL 1060222, at

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

*3-4 (D. Or. Nov. 13, 1998). Because the City was not sued and TPD is not a suable entity, summary judgment against plaintiff's federal and state claims should be granted.

These claims are also barred as a matter of law because plaintiff entered into a valid settlement and release agreement with the City in January of 2018. (Ex. 17, 1/18/18 Settlement Agreement Between Plaintiff, City, and Teamsters Local 324). Under this agreement, the City rescinded plaintiff's termination based on violations of TPD and City policies and accepted her resignation in lieu of discharge. (*Id.* at p. 1). In return, plaintiff and her union agreed not to pursue any legal action or file any claims of any nature challenging plaintiff's discharge. (*Id.* at p. 2). While plaintiff could "pursu[e] any legal claims she may have independently from the Union," both her claims in this case arise from her discharge. (*Id.*).

To the extent plaintiff's claims are not barred by failing to sue the proper defendant and the terms of the settlement agreement, the Section 1983 free speech claim fails as a matter of law because (1) plaintiff did not engage in constitutionally protected speech on a matter of public concern; (2) spoke in her capacity as a public employee rather than as a private citizen at all times prior to her discharge; and (3) was discharged for a legitimate, nonretaliatory reason.

Plaintiff also fails to state a colorable *Monell* claim because (1) she did not suffer a deprivation of a constitutionally protected interest by any actions of TPD related to her discharge; and (2) she cannot demonstrate there was a municipal policy, custom or practice to specifically deprive her of the constitutional right to be free from retaliation for any alleged speech on a matter of public concern.

The whistleblower claim against TPD fails because plaintiff did not make any disclosures" of wrongdoing within the meaning of ORS 659A.203. And, like the retaliation claim, plaintiff cannot establish a causal link between her discharge and any alleged protected activity.

//

//

//

**Page 2 –  DEFENDANT CITY OF TURNER POLICE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT**

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

## II.    STATEMENT OF MATERIAL FACTS

### A.    Background.

Plaintiff began serving as a reserve officer for TPD in 2012, which is when she met co-defendant TPD Chief Don Taylor.  (Compl. ¶ 12; Kraemer Decl., Ex. 1, White Dep. 15:17-20).  Plaintiff continued as a reserve for the next three years.  (Ex. 1, White Dep. 16:21-23).

On September 29, 2015, while still a reserve, plaintiff received a Letter of Investigative Notice And Notice of Administrative Leave concerning a complaint about plaintiff from Stacey Rios, formerly married to plaintiff's uncle.  (Ex. 2, 9/29/15 Letter of Investigative Notice and Incident Report).  "The incident involved a violation(s) of the following Departmental Policy(s): Policy #104, Oath of Office, Policy #340, Conduct, which may include but is not limited to 340.3.2 (h), and Policy #340 3.5 and Policy #1060.4 (b), (c) and (e) regarding Employee Speech, Expressions and Social Networking."  (*Id.* at p. 1).

Rios' complaint arose from Facebook messages she received from plaintiff, which plaintiff sent because Rios was allegedly spreading rumors about plaintiff's husband.  (Ex. 1, White Dep. 16:24-17:10, 17:18-18-3; Ex. 2).  Chief Taylor reviewed the messages and met with plaintiff, noting "[s]ince this was a personal matter involving family, there was no formal discipline. I did coach Lacey however on the fact that when we chose this occupation, there are times we are constrained from saying what others may be able to, with no professional or work related repercussions."  (Ex. 2, p. 4; Ex. 1, White Dep. 19:24-20:11).

Less than a month later, in October of 2015, plaintiff was hired as a full-time police officer with TPD by City Administrator David Sawyer.  (Compl. ¶ 13; Ex. 1, White Dep. 16:12-20; Ex. 3, Sawyer Dep. 12:20-13:2, 42:2-6).  Taylor and plaintiff were the only full-time officers of TPD.  (Compl. ¶¶ 15-16).  Plaintiff's employment with TPD was subject to a Collective Bargaining Agreement (CBA).  (Ex. 4, Excerpts from CBA Between City of Turner and Teamsters Local 324, Articles 4-5).

//

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

**B.    Plaintiff Responds to City Administrator Sawyer's Concern in January of 2016 Regarding Building Security.**

On January 28, 2016, Sawyer sent an email to Taylor and plaintiff, noting "[t]he police entrance to city hall has not had the dead bolt locked n couple times this week.  I know that door is a little funky right now but please be mindful of being sure it is locked."  (Ex. 5, 1/28/16-2/25/16 Email String Between White, Taylor, and Sawyer).  In response, plaintiff sent an email to Sawyer, first noting "I believe Tina was the last one there last night."  (*Id.* at p. 3).  Plaintiff went on to observe this was an ongoing issue, suggesting that to make the door more secure they could install "some kind of code to punch in on the handle to open it or a card you swipe to open it[.]"  (*Id.*).  Plaintiff also said "[s]eems like a safety issue to me, just bringing it up now that we are on the subject."  (*Id.*).

Sawyer responded to plaintiff with the comment "interesting thoughts."  (*Id.* at p. 2).  Taylor also responded, stating "[s]ome sort of electronic lock or key card lock would be amazing and would definitely increase security."  (*Id.*).  On February 2, 2016, Sawyer followed up with an email to Taylor seeking his "advi[c]e/concerns with security at this point?"  (*Id.*).

Taylor responded by explaining [t]he biggest issue we face are both doors that lead into the 'police department.' When we have our next LEDS audit, we will get hammered on this issue and forced to deal with it or they will jerk our ability to use LEDS which we can't do without." (*Id.* at p. 1).  Taylor further noted "[h]aving either key card locks or an electronic key pad lock is the only way that I can see for us to get around this. Having the back door unlocked during business hours is also an officer safety issue as well as at night, even though locked[.]"  (*Id.*).  Taylor asked plaintiff to explore "various options for a camera system to be installed" and a camera was subsequently purchased and mounted above the back door.  (Ex. 1, White Dep. 51:1-21).

On July 14, 2016, plaintiff revisited and expanded on the security issue in an email she sent to all City employees, noting "I believe this issue has been brought up in the past, but it was in regards to locking the deadbolt and setting the alarm. I am writing this email to address the

**KRAEMER & LEWIS**
Not a Partnership
**Employees of CIS (Citycounty Insurance Services)**
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

security of our building and police office spaces during the day time and regular business hours."
(Ex. 6, 7/14-7/15/16 Email String Between White and Taylor; Ex. 1, White Dep. 52:22-53:13).
Plaintiff went on to admonish City staff to keep the back door locked and told them "I'd rather
have a secure building than an unsecure one for the sake of being complacent and not wanting to
carry your key on you." (Ex. 6).

In an email response, Taylor said "that to send this to everyone was not appropriate.
Although I agree it's a safety issue, that David and I have been working on as its not a cheap
electronic lock fix, this is a policy issue for the PD and City Hall, neither of which you set policy
for. I understand your forms of communication but others don't." (*Id.*).

**C.      Plaintiff Complains About the Condition of Chief Taylor's Police Vehicle.**

On January 16, 2017, plaintiff emailed Taylor about his police vehicle, complaining that
the gun lock button for the rifle rack did not function properly and expressing her disgust about
how filthy his vehicle was, noting that it contained garbage, dirt and other debris. (Compl. ¶ 20;
Ex. 7, 1/16/17 Email String Between White and Taylor, p. 1-4). Plaintiff informed Taylor she
spent at least an hour cleaning the car, which was "unacceptable and embarrassing" and "looks
totally unprofessional and unsanitary[.]" (Ex. 7, p. 4). In response, Taylor emailed "[t]hanks for
wiping it down. Greatly appreciated." (*Id.* at p. 1).

**D.      Plaintiff Keeps a Private Log of Alleged Policy Violations By Chief Taylor and TPD.**

In January of 2017, "when I made the decision to start considering employment
somewhere else," plaintiff started keeping a written log of what she characterized as policy
violations. (Ex. 1, White Dep. 66:2-9, 69:22-25). The purpose of the log was to raise these
issues during a discussion at her eventual exit interview, so "the department could correct them
before they brought a new officer on." (*Id.* at 71:12-18). Plaintiff never shared the alleged
contents of her log with Chief Taylor, City Administrator Sawyer, any member of the City
Council, any outside entity, or any news organization. (Compl. ¶¶ 1-59).

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

The policy violations contained in plaintiff's alleged written log included, but were not limited to, Taylor and TPD failing to (1) investigate DHS reports in a timely manner; (2) properly investigate reports of sexual assault; (3) accept and investigate citizen complaints and reports; (4) properly conduct employee evaluations; (5) maintain a locked evidence locker; (6) provide secure storage for weapons and ammunition; (7) report accurate training records; (8) comply with FBI standards; and (9) conduct and implement proper training techniques.  (Compl. ¶ 22).

Plaintiff testified that the DHS issue concerned reports on a few occasions regarding sexual assaults, domestic violence, and DHS cross reports that came through on the fax machine and required 24-hour response time from law enforcement.  (Ex. 1, White Dep. 88:9-21). Plaintiff stated that complying with the 24-hour requirement was sometimes, but "not always" met.  (*Id.* at 88:22-89:1).

Plaintiff further qualified her assertion with "the domestic violence ones weren't necessarily the time crucial ones." (*Id.*).  Asked what domestic violence incidents were not properly handled by the chief, she replied "I can't think of a domestic violence one at the top of my head." (*Id.* at 92:23-93:3).  Plaintiff had no knowledge of any complaints from DHS about the timeliness of TPD's investigations.  (*Id.* at 101:6-102:5).

Although the City's personnel policies included employee evaluations, in practice City Administrator Sawyer did not require department heads such as Chief Taylor to conduct regular evaluations.  (Ex. 3, Sawyer Dep. 105:21-106:10).  Plaintiff had evaluations when she was a reserve officer but not after becoming a regular full-time officer.  (Ex. 1, White Dep. 123:13-20).

TPD does not have a separate "property room," which is typically where evidence is stored inside a large room. (Ex. 8, Taylor Dep. 56:10-23).  Instead, TPD has office space for reserve officers that contains a large bank of evidence lockers.  (*Id.* at 52:16-21, 56:13-23).  TPD officers collect evidence and lock it in a locker until it is picked up by the County Sheriff's Office.  (*Id.* at 52:8-15).  TPD was compliant with its evidence policy.  (*Id.* at 56:13-23).

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

TPD has a policy for storage of firearms and ammunition. (Ex. 8, Taylor Dep. 60:11-63:7; Ex. 9, Compton Dep. 18:18-20:5). While plaintiff was a TPD officer, firearms and ammunition were securely stored in Chief Taylor's office in the old City Hall. (Ex. 8, Taylor Dep. 61:15-63:7).

Plaintiff had the required DPSST training to become a police officer. (Ex. 1, White Dep. 130:2-6). Another TPD reserve officer who worked with plaintiff beginning in August of 2016 received his academy training and training from Chief Taylor in various areas such as time entry and firearms. (Ex. 9, Compton Dep. 11:16-12:1, 14:14-19, 16:10-15, 18:9-17, 22:10-15, 27:25-28:21).

Plaintiff alleges that "[i]n March of 2017, Plaintiff returned to her office to find the log had been removed. Upon further inspection, [plaintiff] found the log [and printouts of various TPD policies], torn-up in Chief Taylor's trash can." (Compl. ¶ 23). Along with the log, plaintiff allegedly found a draft letter of administrative leave addressed to her regarding an attendance policy violation. (Ex. 1, White Dep. 66:21-67:2). Instead of keeping the torn-up papers, plaintiff took them out of the trash, photographed the torn papers, and then put them back in the trash can. (*Id.* at 73:16-74:5).

**E.      In March of 2017, Plaintiff is Investigated For Time Entry Discrepancies.**

On March 30, 2017, plaintiff received two Letters of Investigative Notices from Chief Taylor. (Ex. 10, 3/30/17 Letters of Investigative Notice). The first letter "concern[ed] incidents in which you were involved regarding your conduct and performance surrounding the accurate documentation of hours worked, actual hours worked during various shifts and truthfulness." (*Id.* at p. 1-2). The second letter "concern[ed] incidents in which you were involved regarding your conduct and performance surrounding the blatant disregard and failure to follow a direct order and insubordination by exercising police duties and powers while being on administrative leave." (*Id.* at p. 3-4).

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

On the same day, plaintiff received a Letter of Administrative Leave explaining that due to the pending investigation she was "placed on administrative leave with pay." (Ex. 11, 3/30/17 Letter of Administrative Leave).

The City engaged the Salem Police Department to conduct an investigation, which assigned Detective Sgt. Stephen Smith to handle the inquiry. (Ex. 12, 6/8/17 Internal Administrative Investigation, p. 1-2). Specifically, plaintiff's actions were possible violations of the following City of Turner Policies and Procedures:

• Department Policy 104: Oath of Office;

• Department Policy 104.2: Law Enforcement Code of Ethics;

• Department Policy 340.3.1: Attendance: section (a) & (b);

• Department Policy 340.3.5: Performance: section (i); (n); (o); & (ab);

• City of Turner Personnel Manual – Resolution 12-12; Work Place Rules, Offenses for Immediate Action: (1); & Offenses for Immediate Termination: (3).

(*Id.* at p. 2; Ex. 13, Excerpts from TPD Policy Manual – Policies 104, 340; Ex. 14, Excerpts from City of Turner Personnel Manual, p. 14-16).

During the investigation, Sgt. Smith interviewed plaintiff twice. (Ex. 12, p. 7-8, 24). Sgt. Smith noted "[t]he core issue in this investigation surrounds the accuracy of the timesheets submitted by Officer White. In comparing the timesheets submitted by Officer White with the MDT [mobile data terminal] logs produced by METCOM for the period of January 2016 through March 2017 (minus March-May 2016), *there is evidence that supports a pattern of inaccurate entries*." (*Id.* at p. 36) (emphasis added).

Sgt. Smith further determined:

The comparison shows during the twelve months of records, there are 44 incidents where there are discrepancies between the timesheets and the MDT logs of greater than one hour. Of those incidents, 23 incidents have a discrepancy of 2-6 hours. In addition, there are a total of 24 incidents of one hour or less.

When reviewing the total amount of time in question, there is approximately 129 hours and 20 minutes of compensated time that exceed the amount of time shown as "on-duty" according to MDT logs. In comparison, there was a total of 13 hours

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

and 16 minutes listed on the MDT logs that was in excess of Officer White's normal work schedule; however, it was not listed on her timesheets as overtime or other compensated time.

*There is no evidence to support the claim that training or the failure to train on the completion of timesheets is the reason for the discrepancies on Officer White's timesheets.* In reviewing the standardized timesheets used by the City of Turner, the form is straight forward and "self-explanatory." Although the recording of time on Holidays needs initial explanation, all other accounting does not warrant extensive training. Officer White stated she had no "formal" training but did state that she was shown by "her husband" (a former Turner Police Officer) how to complete the form.

(*Id.* at p. 36) (emphasis added).

As a result, Sgt. Smith concluded "[a]ll allegations are sustained."  (*Id.* at p. 38).

Regarding the second set of possible policy violations, Sgt. Smith determined:

The following allegations are sustained:

• Department Policy 200.3: Orders

• Department Policy 340.3.5: Performance: section (c); (e); (f); & (m)

• City of Turner Personnel Manual; Resolution 12-12; Work Place Rules, Offenses for Immediate Termination: (10)

The following allegations are not sustained:

• Department Policy 340.3.2: Conduct: section (h) & (i)

(Ex. 12, p. 41).

After completion of the investigation and pursuant to plaintiff's CBA, on July 11, 2017 Sawyer sent plaintiff a letter outlining the investigation's findings and stating he was considering discharging her.  (Ex. 15, 7/11/17 Letter from Sawyer to White, p. 1).  The letter further explained that plaintiff and her union would be able to review the investigation file and have the opportunity to schedule an informal *Loudermill* hearing to present her side of the story.  (*Id.*).

Sawyer discharged plaintiff on July 31, 2017.  (Ex. 3, Sawyer Dep. 22:3-20; Ex. 8, Taylor Dep. 87:3-21; Ex. 16, 7/31/17 Letter from Sawyer to White).

//

//

**Page 9 –   DEFENDANT CITY OF TURNER POLICE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT**

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

**F.    Plaintiff's Union Grieves Her Discharge and a Settlement is Reached Between the City, Plaintiff, and Her Union.**

After plaintiff's discharge, her "Union filed a grievance pursuant to the labor agreement between the City and the Union, disputing Ms. White's discharge[.]" (Ex. 18, 1/18/18 Settlement Agreement Between White, City, and Teamsters Local 324, p. 1). Plaintiff's grievance asserted her discharge was "unjust" because she was discharged "without progressive discipline and without 'cause' in violation of the" CBA. (Ex. 17, 8/9/17 Grievance Letter from Muhs to Sawyer). The grievance was "advanced to arbitration[.]" (*Id.*). Before the arbitration occurred, the grievance was resolved when a settlement was reached in January of 2018 "in lieu of proceeding to arbitration[.]" (Ex. 18, p. 1).

The settlement provided that "the City rescinds Ms. White's termination and accepts her resignation effective retroactively to August 1, 2017" and "the City agrees to notify the Department of Public Safety Standards and Training (DPSST) that Ms. White resigned pursuant to a separation agreement[.]" (Ex. 18, p. 1-2; Ex. 1, White Dep. 108:16-109:8). The settlement also provided that the Union withdrew, with prejudice, the grievance filed over plaintiff's discharge. (Ex.18, p. 2). Further, "[t]he Union shall not pursue any legal action or file any claims of any nature challenging Ms. White's discharge," although plaintiff could "pursu[e] any legal claims she may have independently from the Union." (*Id.*).

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011); Fed. R. Civ. P. 56(a). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id.* "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

**Page 10 – DEFENDANT CITY OF TURNER POLICE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT**

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). A mere disagreement or bald assertion that a genuine dispute as to a material fact exists will not preclude the grant of summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be necessary. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*

## IV.    LEGAL MEMORANDUM

### A.    Plaintiff's Claims Fail as a Matter of Law Because She Released Her Right to Bring Any Caims Arising from Her Discharge When She Signed and Accepted the Settlement Agreement.

As a general matter, the construction and enforcement of settlement agreements are governed by principles of local law. *Jones v. McDaniel*, 717 F.3d 1062, 1067 (9th Cir. 2013). A release is a contract in which one or more parties agree to abandon claims or rights. *Lindgren v. Berg,* 307 Or. 659, 665, 772 P.2d 1336 (1989). A release agreement thus is subject to construction and interpretation like any other contract. *Ristau v. Wescold, Inc.,* 318 Or. 383, 387, 868 P.2d 1331, 1333 (1994). Inherent in the purpose of a release agreement is a promise to abandon a claim or right that is within the contemplation of the parties." *Patterson v. Am. Med. Systems,* 141 Or. App. 50, 53, 916 P.2d 881, *review denied,* 324 Or. 229, 925 P.2d 907 (1996).

The rule is that an honest release, untainted by unconscionable conduct, cannot be set aside because it was improvident. *Walcutt v. Inform Graphics, Inc.,* 109 Or. App. 148, 151, 817

**KRAEMER & LEWIS**
Not a Partnership
**Employees of CIS (Citycounty Insurance Services)**
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

P.2d 1353 (1991).  Releases and settlements are favored under the law because certainty and judicial economy are served when parties can negotiate settlement of their disputes with confidence that their settlement agreements will be upheld and enforced by the courts.  *Graves v. Tulleners,* 205 Or. App. 267, 278, 134 P.3d 990 (2006); *Maier v. Pac. Heritage Homes, Inc.*, 72 F. Supp. 2d 1184, 1191 (D. Or. 1999).

Releases are not rendered unenforceable either by "ordinary mistakes" or negligent mistakes in the parties' knowledge and understandings when they enter into them.  *Walcutt*, 109 Or. App. at 151.  Additionally, a general release from all claims and demands is sufficient to bar a specific claim, unless the claim is excepted from the release agreement.  *Ristau*, 318 Or at 389.

Here, the terms of the settlement agreement are clear and unambiguous.  The plain language of the agreement should have given plaintiff notice that she was giving up *something* in exchange for the City rescinding her termination and accepting her resignation in lieu of discharge.  Additional benefits included (1) not contesting plaintiff's application for unemployment benefits; (2) limiting any inquiries from potential employers to plaintiff's dates of employment with the City, positions held, salary and benefits, a general summary of her job duties, and that she resigned; (3) notifying Department of Public Safety Standards and Training (DPSST) that plaintiff resigned pursuant to a separation agreement; and (4) taking no further action with regard to the *Brady v. Maryland* notice previously provided to the DA's Office.  (Ex. 17, p. 1-2).

Plaintiff also acknowledged she received fair and adequate representation from the union in reaching this settlement.  (Ex. 17, p. 3).  Plaintiff cannot rely on her subjective beliefs to contradict the agreement's plain language or to create an ambiguity that does not exist.  *Edwards v. Times Mirror Co.,* 102 Or. App. 440, 446, 795 P.2d 564 (1990).

Plaintiff's federal and state retaliation claims in this case arise from her discharge. Plaintiff alleges she was unjustly terminated because she never falsified any of her time entries, the same defense she offered in the grievance process.  (Compl. ¶¶ 27-29).  Adding "retaliation"

**KRAEMER & LEWIS**
Not a Partnership
**Employees of CIS (Citycounty Insurance Services)**
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

as Taylor's alleged motivation for beginning the investigation does not change the underlying basis for the discharge and plaintiff's "just cause" grievance.  Because the settlement agreement is unambiguous, was freely negotiated by plaintiff, and none of the claims related to her discharge are excepted from the release, all of plaintiff's federal and state retaliation claims are barred.

**B.**     **Plaintiff's First Amendment Retaliation Claim Fails Because She Made No Protected Speech, Any Allegedly Protected Speech was Made in Her Capacity as a Public Employee, and the Discharge Decision was Unrelated to Any Protected Speech.**

Plaintiff's Section 1983 First Amendment retaliation claim also fails to state a claim because neither count is based on alleged violations of plaintiff's constitutional rights by TPD. To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The Ninth Circuit distilled the Supreme Court's prior holdings on the issue of First Amendment retaliation into a sequential five-step inquiry: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the public entity had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the public entity would have taken the adverse employment action even absent the protected speech.  *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

All the *Eng* factors are necessary, in the sense that failure to meet any one of them is fatal to the plaintiff's case.  *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013) (en banc). Because "all five factors are independently necessary," a reviewing court is free to address a potentially dispositive factor first rather than addressing each factor sequentially.  *Id.*

Plaintiff bears the initial burden of establishing the first three elements of her retaliation

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

claim. *Eng*, 552 F.3d at 1070-71. If that showing is made, the burden shifts to the employer who must demonstrate either that, under the balancing test established by *Pickering v. Board of Education,* 391 U.S. 563, 568 (1968), the employer's legitimate administrative interests outweigh the employee's First Amendment rights or that, under the mixed motive analysis established by *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287 (1977), the employer would have reached the same decision even in the absence of the employee's protected conduct. *Thomas v. City of Beaverton,* 379 F.3d 802, 808 (9th Cir. 2004).

In other words, the employer may avoid liability by showing that the employee's protected speech was not a but-for cause of the adverse employment action. *Eng*, 552 F.3d at 1072; *Mendez v. County of Los Angeles*, 897 F.3d 1067, 1074 (9th Cir. 2018). Here, because plaintiff cannot establish the first three elements of her First Amendment retaliation claim, it fails as a matter of law.

      1.     <u>Plaintiff Did Not Speak on a Matter of Public Concern</u>.

First, plaintiff bears the burden of showing that the speech alleged addressed an issue of public concern. *Desrochers v. City of San Bernardino*, 572 F.3d 703, 709 (9th Cir. 2009). Speech warrants protection when it seeks to bring to light actual or potential wrongdoing or breach of public trust. *Barone v. City of Springfield*, 902 F.3d 1091, 1098 (9th Cir. 2018).

Speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern. *Coszalter v. City of Salem,* 320 F.3d 968, 973 (9th Cir. 2003). While the First Amendment invests public employees with certain rights, it does not empower them to "constitutionalize the employee grievance." *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006).

There is no "precise definition" of what constitutes a matter of "public concern." *Desrochers*, 572 F.3d at 709. "It is clear, however, that the essential question is whether the speech addressed matters of 'public' as opposed to 'personal' interest." *Id.* For purposes of establishing speech on a matter of public concern, the focus must be on whether the public or community is

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

likely to be truly interested in the particular expression, or whether it is more properly viewed as essentially a private grievance. *Roe v. City and Cnty. of San Francisco,* 109 F.3d 578, 585 (9th Cir. 1997).

The Ninth Circuit has never held that a simple reference to government functioning automatically qualifies as speech on a matter of public concern. *Desrochers,* 572 F.3d at 711. To the contrary, the fact that speech contains "passing references to public safety[,] incidental to the message conveyed" weighs against a finding of public concern. *Id.* (quoting *Robinson v. York,* 566 F.3d 817, 823 (9th Cir. 2009)).

Whether an employee's speech addresses a matter of public concern is a pure question of law that must be determined "by the content, form, and context of a given statement, as revealed by the whole record." *Karl v. City of Mountlake Terrace,* 678 F.3d 1062, 1069 (9th Cir. 2012). Of these, content is the most important factor. *Desrochers,* 572 F.3d at 710. If the speech in question does not address a matter of public concern, then the speech is unprotected. *Eng,* 552 F.3d at 1070-71.

An employee's motivation is relevant to the public-concern inquiry. *Desrochers,* 572 F.3d at 715. Two questions frame this inquiry: Why did the employee speak? Does the speech seek to bring to light actual or potential wrongdoing or breach of public trust, or is it animated instead by dissatisfaction with one's employment situation? *Id.*

Here, the content, form, and context of plaintiff's allegedly protected speech establish that, to the extent she "spoke" at all, it was not on matters of public concern. Plaintiff admitted the content of her alleged speech concerned standards and practices within TPD:

Q:    And I'm assuming then that the only people that you had discussed the contents of the log with would have been your husband and then the idea was during the exit interview I'll talk to the chief and city manager?

A:    Well, no, I had brought up multiple issues verbally with the chief and with other – other cops and just to run it by and get people's opinions on how other agencies do it and how – what is standard and what is best practice[.]

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

(Ex. 1, White Dep. 70:23-71:7).  Similarly, plaintiff's alleged log concerned various TPD

internal policies:

> Q.      Let's just name them right now.
>
> *  *  *  *  *
>
> A.      The firearms policy, the policy that talks about taking complaints and report
>         writing, and our uniforms, and our vehicles, and wearing a vest, and chewing
>         tobacco on duty, wearing a seatbelt, having secured evidence, storage for that,
>         firearms and ammunition storage.

(Ex. 1, White Dep. 72:25, 73:4-9).

 Speech focused solely on internal policy and personnel grievances does not implicate the

First Amendment.  *Hyland v. Wonder,* 972 F.2d 1129, 1137 (9th Cir. 1992).  Instead, this is

"speech about the minutiae" of TPD's internal practices rather than speech about a matter of

broad societal concern for First Amendment retaliation purposes.  *Handte v. Storey Cty.*, 461 F.

App'x 591, 592 (9th Cir. 2011).  In *Handte*, plaintiff alleged that the defendants took action

against him after he (1) complained to the defendants about their lack of thoroughness in an

Internal Affairs investigation; (2) criticized the defendants regarding a change in their overtime

policy; and (3) criticized the defendants regarding a new firearms training practice.  *Id.*

 The district court found that none of Handte's alleged complaints or criticisms supported

a First Amendment retaliation claim.  *Id.*  The Ninth Circuit agreed, holding that the district court

correctly determined that Handte failed at *Eng's* first step, the public concern step.  *Id.*

 Similarly, in *Turner v. City & County of San Francisco*, 788 F.3d 1206, 1211 (9th Cir.

2015), plaintiff voiced his grievances internally—at union meetings, to his supervisor, and to

Human Resources—and they were specifically related to the conditions of his employment.

Plaintiff could have pursued a complaint with the San Francisco Civil Service Commission, gone

to the Board of Supervisors for the City and County of San Francisco, gone to the press, or

otherwise attempted to air his concerns in a public forum but did not do so.  *Id.*

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

Moreover, there was no indication that plaintiff sought broad-based union action or relief on behalf of other similarly situated employees. *Id.* Accordingly, plaintiff could not establish that he spoke on a matter of public concern. *Id.* at 1211-12; *see also Desrochers*, 572 F.3d at 710-11 (holding that personnel issues in a police department were not matters of public concern).

The form of plaintiff's speech also weighs against finding that it was on a matter of public concern. For example, in *Desrochers*, the two police sergeant plaintiffs' speech took the form of an internal employee grievance where the public was never made aware of their concerns. *Desrochers*, 572 F.3d at 714. The Ninth Circuit recognizes that a limited audience weighs against a claim of protected speech. *Id.* In other words, the form of a statement reflects a matter of public concern when the speech is made in a public forum as opposed to a private conversation. *Id.* at 714.

The relevance of non-disclosure to the public tracks the Supreme Court's acknowledgment that "the public's interest in receiving the well-informed views of government employees engaging in civic discussion" is one of the primary purposes of its First Amendment retaliation jurisprudence. *Garcetti,* 547 U.S. at 419; *see also Ritchie v. Staton by & through Multnomah Cty. Sheriff's Office*, No. 03:17-CV-00844-AC, 2018 WL 2276241, at *4 (D. Or. Mar. 28, 2018), *report and recommendation adopted*, No. 3:17-CV-00844-AC, 2018 WL 2248450 (D. Or. May 16, 2018) (because Ritchie's findings given only to supervisor, form of his speech weighed against finding he addressed matters of public concern).

To the extent plaintiff spoke at all, it consisted of her ongoing conversations with Chief Taylor about various internal issues during her employment at TPD. (Ex. 1, White Dep. 70:23-71:7). Regarding her alleged log, she did not present her concerns to anyone, much less anyone outside TPD.

Finally, the context of a statement reflects a matter of public concern when the speech is motivated by a desire to "bring to light actual or potential wrongdoing or breach of public trust." *Desrochers*, 572 F.3d at 715. Here, plaintiff's speech merely reflects an employee's

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

dissatisfaction with her employment situation, a conclusion that weighs against a finding of public concern. *Id.* at 717. Plaintiff admitted that her purpose in keeping the log was unrelated to making the public aware of any alleged policy violations but was born out of her dissatisfaction with her employment situation:

> Q:    And I think you said in one of your statements that your purpose of the log was so you could have a discussion with somebody giving you an exit interview about what you saw as some of the issues there?
>
> A:    That's true.
>
> * * * * *
>
> A.    And after being met with so much resistance I decided that it was time that I had just found somewhere else to work. And I started keeping a log with the intention that at my exit interview I would be able to bring up all these issues so that hopefully the department could correct them before they brought a new officer on.

 (Ex. 1, White Dep. 70:1-6, 71:12-18). It is undisputed that during the time plaintiff kept her log, she actively sought a new job, applying for positions at Polk County Sheriff's Office, Marion County Sheriff's Office, Woodburn, and the Dallas. (*Id.* at 163:25-164:15).

The Ninth Circuit has repeatedly held that where the content of the speech is only marginally related to issues of public concern but the form and context make clear that the statements were motivated by private concerns, no First Amendment protection will lie. *Turner*, 788 F.3d at 1211. Because plaintiff fails to state a claim at the first step of the *Eng* analysis, her Section 1983 First Amendment claim fails as a matter of law and should be dismissed with prejudice.

> 2.    <u>To the Extent Plaintiff Spoke At All, It Was in Her Capacity as a Public Employee.</u>

Plaintiff's claim also fails at the second step of the *Eng* inquiry because she cannot meet the burden of showing her allegedly protected speech was spoken in the capacity of a private citizen and not as a public employee. *Eng*, 552 F.3d at 1071; *Posey v. Lake Pend Oreille School Dist. No. 84,* 546 F.3d 1121, 1126-27 (9th Cir. 2008). The First Amendment does not protect a government employee's speech made in her official capacity. Statements are made in the

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

speaker's capacity as citizen if the speaker "had no official duty" to make the questioned statements, or if the speech was not the product of "performing the tasks the employee was paid to perform." *Posey,* 546 F.3d at 1127 n.2.

In *Freitag v. Ayers,* 468 F.3d 528, 544, 546 (9th Cir. 2006), the court held that prison guard Freitag's reports of sexual harassment, complaints to her superiors within the prison system, and documentation of the prison system's response to her complaints were all examples of unprotected speech. Because Freitag was required to report inmate misconduct, the Ninth Circuit concluded that her complaints to the officials in the chain of command were made pursuant to her official duties. *Id.*; *see also Fox v. Josephine Cty.*, No. 09-3067-CL, 2010 WL 3118703, at *5 (D. Or. Aug. 3, 2010) (because plaintiff hired as lead dispatcher to help make dispatch center run, his statements resulted from performing his job duties as lead dispatcher).

Plaintiff's situation is analogous to the officer in *Hagen v. City of Eugene*, 736 F.3d 1251, 1258 (9th Cir. 2013), whose complaints involved safety concerns stemming from particular incidents or occurrences. Moreover, the City of Eugene's Human Resource and Risk Services Administrative Policies and Procedures Manual required Hagen to report safety concerns. *Id.* at 1259.

The same is true in this case. The alleged "multiple issues" plaintiff "brought up" were only with the chief and "other cops . . . just to run it by and get people's opinions on how other agencies do it and how – what is standard and what is best practice[.]" (Ex. 1, White Dep. 70:23-71:7). Plaintiff's speech owed its existence to her position as a TPD officer where she gained knowledge of TPD's allegedly deficient policies.

To the extent plaintiff argues she spoke in contravention of her supervisor's orders, that lone consideration is not enough to transform employee speech into citizen speech. *Kennedy v. Bremerton Sch. Dist.*, 869 F.3d 813, 828 (9th Cir. 2017); *Dahlia*, 735 F.3d at 1075. If it were, there would be no need for the *Garcetti* analysis because *every* First Amendment retaliation case in the employment context involves some degree of employer disagreement with the expressive

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

conduct. *Kennedy*, 869 F.3d at 828. Because plaintiff spoke as a public employee, her

retaliation claim also fails at the second *Eng* step.

3.    <u>Plaintiff Cannot Establish that Her Allegedly Protected Speech was a</u> <u>Substantial</u> <u>or Motivating Factor in Her Termination</u>.

Plaintiff also bears the burden of showing that her speech was a motivating factor in her

discharge. *Freitag*, 468 F.3d at 543. Lacking any direct evidence that she was terminated

because of her allegedly protected speech, here plaintiff must rely on circumstantial evidence.

In the free speech cases in which the Ninth Circuit held that circumstantial evidence

created a genuine issue of material fact on the question of retaliatory motive, the plaintiff, in

addition to producing evidence that her employer knew of her speech, produced evidence of at

least one of the following three types: (1) evidence that the "proximity in time between the

protected action and the allegedly retaliatory employment decision" was one in which a "jury

logically could infer [that the plaintiff] was terminated in retaliation for his speech"; (2) evidence

that her employer expressed opposition to her speech, either to her or to others; or (3) evidence

that her employer's proffered explanations for the adverse employment action were false and

pretextual. *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751-52 (9th Cir. 2001).

None of these types of evidence is present in this case.

a.    *Plaintiff Cannot Establish Temporal Proximity Between Her Alleged* *Speech on a Matter of Public Concern and her Termination.*

A court may not infer causation from temporal proximity unless the time between an

employer's knowledge of protected activity and an adverse employment action is "very close,"

and even a three-to-four-month time lapse is insufficient to infer causation. *Clark County School*

*Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

Plaintiff alleges "[d]uring her time with the Turner PD, Plaintiff received numerous

commendations, including commendations from Chief Taylor. In all of her performance

evaluations, Chief Taylor determined Plaintiff met or exceeded expectations." (Compl. ¶ 14).

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

Plaintiff also claims that throughout her full-time employment with TPD, which began in October of 2015, she raised various internal policy issues with Chief Taylor, but they got along well and frequently socialized outside work.  (Ex. 1, White Dep. 69:3-6, 70:23-71:11, 104:20-24).

The fact that plaintiff was not discharged until more than one and a half years after becoming a TPD officer creates a strong inference that any such alleged speech had no connection to her discharge.  *Breeden*, 532 U.S. at 273 (action taken 20 months after protected activity suggests, by itself, no causality); *Villiarimo*, 281 F.3d at 1065 ("A nearly 18-month lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation."); *Manatt v. Bank of America*, *NA*, 339 F.3d 792 (9th Cir. 2003) (nine months between publication of plaintiff's discrimination complaint and alleged adverse decisions insufficient to establish causation).

Plaintiff also asserts that Taylor did not "retaliate" against her until he allegedly discovered her private log in March of 2017, which simply repeated and added to alleged policy violations they had discussed before.  (Ex. 1, White Dep. 69:7-21).  Moreover, the record provides a reasonable basis for inferring that the July 2017 discharge decision had nothing to do with her ongoing policy discussions with Taylor.  The investigation into plaintiff's time entry discrepancies confirms that at no time was plaintiff's allegedly protected speech regarding TPD policies a factor in the eventual disciplinary decision.  Plaintiff cannot create a question of fact based on any "timing" argument.

> b. *There Is No Evidence that Taylor or Sawyer Expressed Opposition to Plaintiff's Speech.*

Nothing in the record shows that Chief Taylor or City Administrator Sawyer ever expressed opposition to any issues plaintiff raised prior to her discharge.  The only allegation related to Taylor and Sawyer's response to any issue raised by plaintiff is "[b]oth Chief Taylor and Mr. Sawyer, validated Plaintiff's concerns, stating that security measures would be evaluated and adopted."  (Compl. ¶ 18).

**Page 21 – DEFENDANT CITY OF TURNER POLICE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT**

**KRAEMER & LEWIS**
Not a Partnership
**Employees of CIS (Citycounty Insurance Services)**
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

That Chief Taylor told plaintiff she should not have sent her building security email to all City employees was not evidence that he ever opposed any alleged speech on matters of public concern.  Nor was plaintiff's "concern in the back of my mind that if I had made a personal comment attacking his character or his personality or his speech that I would be reprimanded for that or offend him in some way" evidence that Taylor opposed any speech on a matter of public concern.  (Ex. 1, White Dep. 104:25-105:7).

　　　　　c.　　The City Had a Basis for Discharge.

Plaintiff was fired for a legitimate, nonretaliatory reason: an outside investigation determined that she violated multiple TPD and City policies.  (Ex. 12).  Plaintiff has no information that Sawyer's decision to discharge her was made because she allegedly had a private log that was shown to no one in her chain of command before she was terminated.  Even if Chief Taylor saw the log as plaintiff alleges, he had no control over Sgt. Smith's independent investigation of plaintiff's time records.

After the investigation was completed, plaintiff had the opportunity to present her side of the story to Sawyer and Taylor and have a union representative assist her before a discharge decision was made.  (Ex. 15).  Plaintiff's union then grieved her discharge and an arbitration hearing was scheduled.  (Ex. 17; Ex. 1, White Dep. 109:12-110:5).  Significantly, despite the fact that "[t]hroughout the investigation, Plaintiff maintained her innocence," she instead chose to forego the arbitration that would have provided her with a full-fledged hearing before a labor arbitrator to challenge the basis of her discharge.  (Compl. ¶ 27; Ex. 1, White Dep. 109:12-110:5).

Importantly, "the district court must not substitute its own judgment about whether the employment decisions were wise, or even fair, for that of the employer."  *Odima v. Westin Tucson Hotel Co.*, 991 F.2d 595, 602 (9th Cir. 1993).  The inquiry is not whether plaintiff deliberately falsified her time sheets; it is whether TPD *believed her actions to be* a violation of TPD and City employment policies.  *Id.* (explaining that courts "only require that an employer honestly believed

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

its reason for its actions, even if its reason is foolish or trivial or even baseless"). As long as TPD believed plaintiff violated its policies, its termination of plaintiff was not pretextual. *Id.*

Additionally, the fact that Sawyer both hired plaintiff and discharged her within the span of one and a half years creates a strong inference against any alleged retaliation. *Coghlan v. Am. Seafoods Co.,* 413 F.3d 1090, 1096-97 (9th Cir. 2005) (where the "same actor" is responsible for both the hiring and firing of a discrimination plaintiff, a strong inference arises that there was no discriminatory action); *Sanchez v. Purina Animal Nutrition, LLC*, No. 03:13-CV-00864-HZ, 2015 WL 667619, at *11 (D. Or. Feb. 13, 2015). Accordingly, the Court should apply the "same actor inference," which holds that evidence *rarely is* sufficient to find the employer's asserted justification is false when the actor who allegedly discriminated against the plaintiff had previously shown a willingness to treat the plaintiff favorably. *Coghlan*, 413 F.3d at 1097.

Because plaintiff was discharged for legitimate and nonretaliatory reasons, her retaliation claim also fails at the third *Eng* step.

## C.    Plaintiff's First Amendment Retaliation Claim Based on a *Monell* Policy Violation Fails as a Matter of Law.

Plaintiff's second count of the Section 1983 claim alleges "it was Defendant Taylor's policy to harass, ostracize, demote and belittle individuals in the Turner Police Department if they reported unlawful or unconstitutional activities." (Compl. ¶ 51). As discussed above, plaintiff cannot bring this claim against TPD, as she attempts to do in asserting that Count Two is brought against "(City of Turner Police Department and City of Turner)." (Compl., p. 10).

In *Keller v. City of Portland*, No. CV-98-263-ST, 1998 WL 1060222, at *3 (D. Or. Nov. 13, 1998), this Court noted that courts have repeatedly decided that city police departments cannot be sued under federal civil rights laws. A city police department is not a separate entity from the city itself and thus is not amenable to suit. *Id.* It is merely the vehicle through which the city fulfills its policing functions. *Id.* Suit must be brought against the city itself. *Id.* Accordingly, the *Keller* Court dismissed Portland Police Bureau as a defendant on the Section

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

1983 claim.  *Id.*  The same is true in this case, TPD should be dismissed as a defendant, and summary judgment should be granted because the City was never sued.

To impose municipal liability under Section 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that the policy amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy was the moving force behind the constitutional violation.  *Plumeau v. School Dist. # 40 Cnty. of Yamhill,* 130 F.3d 432, 438 (9th Cir. 1997).

As discussed above, this *Monell* claim fails as a matter of law because there was no violation of plaintiff's constitutional rights by TPD or the City.  While the liability of municipalities does not turn on the liability of individual officers, it is contingent on a violation of constitutional rights.  *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994).  Thus, municipal defendants cannot be held liable when no constitutional violation has occurred.  *Id.*; *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *German v. Eudaly*, No. 3:17-CV-2028-MO, 2018 WL 3212020, at *5 (D. Or. June 29, 2018) (dismissing with prejudice plaintiff's First Amendment claim against City of Portland because she failed to properly allege constitutional violation to begin with).  The *Monell* claim fails for this reason alone.

To the extent the Court finds that plaintiff stated a viable claim of a constitutional violation, to establish municipal liability, plaintiff must show that her alleged injury is attributable to (1) an express policy of the City; (2) a City custom or widespread practice, not authorized by written law, but so permanent and well settled that it has the force of law; (3) the act of a final City policymaker; or (4) ratification of a subordinate's actions, and the basis for them, by a final City policymaker.  *Lytle v. Carl,* 382 F.3d 978, 982 (9th Cir. 2004).  Liability of a local governing body arises only when action pursuant to an official policy of some nature caused a constitutional tort and not based on *respondeat superior.  Monell v. New York Dep't of*

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

*Social Services*, 436 U.S. 658, 691-94 (1978); *Long v. Cnty. of Los Angeles,* 442 F.3d 1178, 1185 (9th Cir. 2006).

Further, plaintiff must show that the policy amounts to deliberate indifference to a constitutional right and the policy was the "moving force" behind the constitutional violation. *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). Deliberate indifference occurs when the need for more or different action is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need. *Id.* at 1477-78.

A policy is the moving force behind a constitutional violation if it caused the violation. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). Pointing to a municipal policy action or inaction as a "but-for" cause is not enough to prove a causal connection under *Monell*. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996). Rather, the policy must be the proximate cause of the injury. *Id.*

In most circumstances, municipal liability "may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996); *Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001) (an unconstitutional policy or custom claim requires more than isolated incidents of unconstitutional conduct); *Thompson v. Los Angeles*, 885 F.2d 1439, 1443-44 (9th Cir. 1989) (same). Plaintiff must allege facts establishing a persistent and widespread practice such that it constitutes permanent and well settled city policy. *Trevino*, 99 F.3d at 919.

Here, plaintiff bases the *Monell* claim on the alleged actions of Taylor, whom she characterizes as a final policymaker. Contrary to plaintiff's allegation, Taylor was not "a final policy maker for the City of Turner and its Police Department." (Compl. ¶ 51). Policy is set by the Turner City Council. (Ex. 3, Sawyer Dep. 20:25-21:5; Ex. 8, Taylor Dep. 36:17-22). While the TPD police chief has decision-making authority, Sawyer has personnel authority over all city staff,

**Page 25 – DEFENDANT CITY OF TURNER POLICE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT**

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

including authority to hire and fire police department officers. (Ex. 3, Sawyer Dep. 21:15-22:20). Regarding TPD's policies, the City Council approved through a public vote the adoption of policies from Lexipol as the police department policy manual. (*Id.* at 22:21-23:17).

Even if Taylor had policymaking authority with regard to some Lexipol policies, the *Monell* claim still fails to state a colorable claim. First, plaintiff fails to allege that during the one and a half years when she was a City employee, or during her prior time as a reserve officer, either Taylor or Sawyer ever took any adverse employment actions against her based on a "policy to harass, ostracize, demote and belittle" employees. (Compl. ¶¶ 1-59). Nor are there any allegations that any such "policy" existed before plaintiff's employment with TPD. (*Id.*).

For example, in *Swanberg v. Canby*, No. 3:14-CV-00882-HZ, 2015 WL 5254373, at *12 (D. Or. Sept. 9, 2015), plaintiff offered evidence that, in the last five years, two other former city police department employees filed a tort claim notice or lawsuit alleging wrongful constructive discharge. Yet this was not sufficient to show that the City of Canby had a pervasive practice of retaliating against whistleblowers of such a duration that it could be considered "standard operating procedure." *Id.*

Similarly, here plaintiff cannot establish that any alleged actions by individual defendant Taylor amount to an official or unofficial policy for *Monell* purposes because the alleged actions were part of an isolated event specifically directed at plaintiff. (Compl. ¶¶ 24, 30). In other words, plaintiff fails to demonstrate a "direct causal link" to any municipal policy or custom. *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000). For all these reasons, summary judgment should be granted against the *Monell* claim.

### D.    Plaintiff's Whistleblower Claim Fails as a Matter of Law.

Plaintiff's second claim alleges whistleblower retaliation under ORS 659A.203, based on the allegation the "City's agents retaliated against Plaintiff because Plaintiff researched, detailed, authored, and presented her concerns regarding policy violations committed by Chief Taylor and the Turner PD." (Compl. ¶ 57). This claim also fails to state a viable whistleblower claim.

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

Similar to the reasoning discussed above in the *Keller* case, TPD is not a proper party to plaintiff's state law tort claim, as alleged by plaintiff.  (Compl. ¶ 57).  The *Keller* Court discussed and agreed with an earlier decision by Judge Jelderks, in which he held that ORS 30.265 provides for liability against public bodies but not against any bureaus, divisions, or departments.  *Keller*, 1998 WL 1060222, at *4.  Accordingly, the *Keller* Court held that plaintiff's state law tort claim against Portland Police Bureau should also be dismissed because "PPB is not a separate and distinct entity from the City. The PPB is a bureau or part of the City because it fulfills the City's policing functions and its officers are City employees."  *Id.*

The same is true here.  TPD should be dismissed as a defendant in plaintiff's whistleblower claim and, again, the City was never sued.

To establish a prima facie case under ORS 659A.203, plaintiff must show that she (1) engaged in a protected activity; (2) suffered an adverse employment decision; and (3) there was a causal link between the protected activity and the adverse employment decision.  *Neighorn v. Quest Health Care,* 870 F. Supp. 2d 1069, 1102 (D. Or. 2012).

For whistleblowing purposes, a "protected activity" is disclosure of what the employee reasonably believes to be unlawful practices or policies, mismanagement, gross waste of funds, abuse of authority, or a substantial and specific danger to public health and safety.  ORS 659A.203; *Bjurstrom v. Oregon Lottery,* 202 Or. App. 162, 175, 120 P.3d 1235 (2005).

1. <u>Plaintiff Made No "Disclosures" of Wrongdoing Within the Meaning of ORS 659A.203.</u>

As a threshold matter, the record is devoid of facts sufficient to establish that plaintiff made any actionable "disclosures."  In *Bjurstrom*, the Oregon Court of Appeals found that the term "disclose" may be understood to mean, in a general sense, "to make known" or to "open up to general knowledge."  *Bjurstrom*, 202 Or. App. at 169.  The *Bjurstrom* Court held "disclosures" under the whistleblower protection statute include reports of wrongdoing made within an agency or a department if they rise to the level of public concern.  *Id.* at 169, 172.

**Page 27 – DEFENDANT CITY OF TURNER POLICE
    DEPARTMENT'S MOTION FOR SUMMARY
    JUDGMENT**

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

In *Bjurstrom* the court found the plaintiff's oft-repeated concerns to coworkers and supervisors regarding his employer's policy on the use of company-purchased safety shoes, a manager's alleged harassment of a coworker, policies regarding breaks by managers, and the incompetence of the human resources department did not rise to the level of protected disclosures under ORS 659A.203. *Id.* at 173-75. In addition, the cases suggest "disclosure" only extends to reports of previously unavailable information. *See, e.g.*, *Lindsey v. Clatskanie People's Util. Dist.*, 140 F. Supp. 3d 1077, 1092 (D. Or. 2015) (district court's interpretation of protections under ORS 659A.203).

Courts in this district rely on the similarly-worded federal Whistleblower Act of 1989, 5 U.S.C. § 2302, to interpret "disclosure." *Barrier v. City of Dalles*, No. 3:18-CV-1084-AC, 2019 WL 2707519, at *8 (D. Or. June 4, 2019), *report and recommendation adopted sub nom. Barrier v. City of the Dalles*, No. 3:18-CV-01084-AC, 2019 WL 2648808 (D. Or. June 27, 2019). A disclosure is protected only if it is made to a person who was previously unaware of the information, meaning someone in a supervisory position, other than the wrongdoer himself. *Id.*; *Shultz v Multnomah Cty.*, No. 08-CV-886-BR, 2009 WL 1476689, at *13 (D. Or. May 27, 2009) (same). Relatedly, to qualify as a "disclosure" a report must do more than alert a wrongdoer that his conduct is unlawful. *Lindsey*, 140 F. Supp. 3d at 1092.

Such disclosures, then, do not include routine complaints about policies that employees must implement or practices that employees do not like. *Hall v. Douglas Cty.*, 226 Or. App. 276, 281, 203 P.3d 360 (2009). Rather, the legislature intended "mismanagement" to refer to serious agency misconduct having the effect of actually or potentially undermining the agency's ability to fulfill its public mission. *Id.* at 281-82. An employer does not violate ORS 659A.203 for terminating an employee because her complaints are irritating or because they might disrupt the structure of a hierarchical workplace. *Bjurstrom*, 202 Or. App. at 175.

In *Clarke v. Multnomah County*, No. CV-06-229-HU, 2007 WL 915175, at *15 (D. Or. March 23, 2007), defendants argued that plaintiff made no disclosures because none of plaintiff's

**KRAEMER & LEWIS**
Not a Partnership
**Employees of CIS (Citycounty Insurance Services)**
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

communications *disclosed unknown information* to county employees.  For example, plaintiff's communications about Medicaid overpayments did not reveal something that was hidden and unknown.  *Id.*  The other alleged disclosures by plaintiff regarding finance issues were also known to all or most of the employees working in her department.  *Id.*

Even though plaintiff in *Clarke* referenced a "concern that paying Cascadia additional money from a certain fund might constitute fraud on the County's part," there was no evidence that this was *new information* plaintiff provided to her supervisor or anyone else in the County. *Id.* at *16.  The *Clarke* court also noted "any of the communications for which plaintiff says she was retaliated against related to topics or issues already known to either the persons she reported to, or at least to other supervisory persons within the County."  *Id.*

In *Howard v. City of Coos Bay*, No. 09-6257-AA, 2011 WL 899619, at *10 (D. Or. Mar. 14, 2011), the court noted that while the employee "may have provided some details in her email and memos that were unknown to her employer, her main contribution to the discourse was to voice her displeasure with the handling of the situation to the very people who were responsible for the alleged mismanagement of the City's funds."  Accordingly, the court held that the employee did not "make known" or "open up to general knowledge" any new information regarding mismanagement to the City Manager or City Council members. *Id.*

And in *Lindsey v. Clatskanie People's Util. Dist.*, 140 F. Supp. 3d 1077, 1094 (D. Or. 2015), the court agreed the common usage of "disclose" suggests that alerting a wrongdoer that his own conduct is unlawful does not fall under the protection of ORS 659A.203.  Lindsey asserted that his disclosures included reports of violations of ORS 162.325 ("hindering prosecution"), ORS 162.235 ("obstructing governmental or judicial administration"), and ORS 162.295 ("tampering with physical evidence").  *Id.*

Lindsey asserted he made these disclosures by reporting to Booth, his supervisor, that based on his BOLI training, he believed scrubbing Booth's computer would violate the law.  *Id.* According to Lindsey, without a letter from counsel, he refused to perform the scrub.  *Id.*

**Page 29 – DEFENDANT CITY OF TURNER POLICE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT**

**KRAEMER & LEWIS**
Not a Partnership
**Employees of CIS (Citycounty Insurance Services)**
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

Lindsey also purportedly told Booth that a blanket search of another employee's computer was illegal.  *Id.*

However, Lindsey never asserted he told Booth which laws he believed Booth's requests violated.  *Id.*  Additionally, Lindsey never asserted he threatened to report Booth's conduct to a third party or that a third party was present when Lindsey made the reports to Booth.  *Id.*  The court held Lindsey's report to Booth that Booth's own conduct was unlawful, without threatening to reveal Booth's conduct to anyone else, was not a "disclosure" under ORS 659A.203 and thus could not be protected activity.  *Id.*  Lindsey failed to establish a prima facie case under the statute.  *Id.*

Here, in whatever form they took, plaintiff's alleged "disclosures" cannot withstand scrutiny.  Whether contained in emails, alleged verbal communications, or the alleged log never shown to anyone, the record is devoid of evidence that plaintiff "made known" or "opened up to general knowledge" any *new information* regarding unlawful practices, policies, or mismanagement with regard to the operation of TPD.

Plaintiff asserts that "every time I brought up some issue with the chief I was met with resistance[.]"  (Ex. 1, White Dep. 70:23-71:11).  Not because Taylor was unaware of the issues, but because it was not plaintiff's "place to be bringing up these issues, that it's none of my business."  (*Id.*).  If that were true, the fact that at no time did plaintiff ever complain to City Administrator Sawyer, the City Council, or any outside agency regarding any alleged "policy violations" demonstrates why she made no protected disclosures for whistleblowing purposes.

    2.    <u>Plaintiff Cannot Establish a Causal Link Between Any Alleged Protected Activity and Her Discharge</u>.

For the reasons discussed above, plaintiff also cannot establish the third element of a prima facie whistleblower claim: a causal link between the alleged protected activity and the adverse employment decision, since she cannot show that any protected disclosures caused her discharge.

**Page 30 – DEFENDANT CITY OF TURNER POLICE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT**

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

Oregon courts have articulated plaintiff's burden on causation as follows: whether, in the absence of the discriminatory motive, the employee would have been treated differently. *Hardie v. Legacy Health Sys., Inc.*, 167 Or. App. 425, 435, 6 P.3d 531 (2000), *partially superseded by statute on other grounds*. Stated differently, the employee's protected activity must have been a "substantial factor" in the motivation to discharge the employee. *Estes v. Lewis and Clark College,* 152 Or. App. 372, 381, 954 P.2d 792 (1998).

Here, given the intervening outside investigation into plaintiff's timesheet discrepancies, the record shows that plaintiff was discharged not because she made any actionable disclosures but because an independent investigator determined she violated various TPD and City policies by her significant and apparently intentional pattern of claiming and getting paid for more hours than she actually worked. (Ex. 19, Smith Dep. 75:10-77:22, 79:15-80:20). It is undisputed that Sgt. Smith found "[w]ith those amounts of discrepancies, I would say the intent was to defraud." (*Id.* at 81:1-19). Even if plaintiff can establish a prima facie case under ORS 659A.203 (which TPD and the City dispute), the City had a legitimate, nonretaliatory reason for discharging plaintiff.

## V.    CONCLUSION

To transform every workplace squabble into the proverbial "federal case" would be to trivialize the "great principles of free expression" the First Amendment embodies. *Desrochers*, 572 F.3d at 719. That is the case here where, to the extent plaintiff ever spoke on a matter of public concern, the record shows that she did so in her capacity as a public employee about alleged internal practices she did not like. The record also confirms plaintiff's discharge was based not on any allegedly protected speech, but on her documented timekeeping discrepancies as determined by an

//

//

//

//

**Page 31 – DEFENDANT CITY OF TURNER POLICE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT**

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

independent investigator.  For the foregoing reasons, TPD and the City are entitled to summary

judgment on both of plaintiff's claims.

Respectfully submitted this 26th day of November 2019.


KRAEMER & LEWIS

By:    _s/ Steven A. Kraemer_
Steven A. Kraemer, OSB No. 882476
Of Attorneys for Defendant City of Turner
Police Department

**KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900**