Andrew D. Campbell, OSB #022647
Email: andrew@heltzel.com
Heltzel Williams PC
PO Box 1048
Salem, OR 97308
Phone: (503) 585-4422
Fax: (503) 370-4302
     Attorney for Defendant Don Taylor

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| LARISSA WHITE, an individual, | ) | Case No. 6:18-cv-00550-MK |
| | ) | |
| Plaintiff, | ) | **DEFENDANT DON TAYLOR'S** |
| | ) | **REPLY IN SUPPORT OF** |
| v. | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| CITY OF TURNER POLICE CHIEF DON | ) | |
| TAYLOR; by and through the CITY OF | ) | |
| TURNER POLICE DEPARTMENT, a | ) | |
| political subdivision of TURNER, | ) | |
| OREGON, | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW DEFENDANT DON TAYLOR, and offers this Reply Brief in

support of his motion for summary judgment. Defendant Don Taylor ("Taylor") joins in

co-defendant City of Turner's ("City") motion for summary judgment reply and

expressly incorporates the City's arguments to the extent applicable herein. Individually,

Taylor and the City are referred to as such. Collectively, they are referred to as

Defendants.

In her Response to Taylor's and the City's respective motions for summary judgment, Plaintiff Larissa White ("Plaintiff") argues at length that there are genuine fact issues underlying her claims. However, for the reasons which follow, she has failed to point to specific facts from which a jury could reasonably render a verdict in her favor on either of her claims. Consequently, she has failed to meet her burden to demonstrate the existence of genuine issues for trial and summary judgment should be granted for Taylor.

## 1. <u>Actionable Adverse Employment Action for Plaintiff's Claims</u>

### A. **Plaintiff has failed to demonstrate that her separation from Turner PD constitutes an actionable adverse employment action.**

Plaintiff has failed to show that her resignation from the Turner Police Department ("Turner PD") constitutes an "adverse employment action" that could support her First Amendment retaliation and ORS § 659A.203 claims.

Both claims require a plaintiff to demonstrate an adverse employment action. *See Lindsey v. Clatskanie People's Util. Dist.*, 140 F. Supp. 3d 1077, 1091 (D. Or. 2015) (Public employee plaintiffs must demonstrate an adverse employment decision to state a *prima facie* case under ORS § 659A.203); *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (to state a claim for First Amendment retaliation, among other things, a plaintiff must show that she was the subject of an adverse employment decision).

The meaning of an "adverse employment decision" in the ORS § 659A.203 context is found in the statute:

> ORS § 650A.603 forbids a public employer from "[p]rohibit[ing] any employee from disclosing, or tak[ing] or threaten[ing] to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of," among other things, "[a]

**HELTZEL WILLIAMS PC**
**P.O. BOX 1048 ■ SALEM, OREGON 97308-1048**
**TELEPHONE (503) 585-4422 ■ FACSIMILE (503) 370-4302**

violation of any federal or state law" or "[m]ismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety resulting from action of the state, agency or political subdivision." The statute also prohibits public employers from attempts to "[d]iscourage, restrain, dissuade, coerce, prevent or otherwise interfere with disclosure or discussions described in this section."

*Lindsey*, 140 F. Supp. 3d 1091 (citing ORS § 659A.203). The meaning of an adverse employment decision in the First Amendment context is similar. As noted by Plaintiff, to constitute an adverse employment action for First Amendment purposes, an employer's decision must have the effect chilling the exercise of protected First Amendment rights. *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003).

Given these principles, Plaintiff's ultimate separation from Turner PD cannot constitute an actionable adverse employment decision because she voluntarily resigned from her position. *Campbell MSJ Dec. Ex. 13.* Her separation, therefore, was not the City's decision—it was her own. Absent any volitional action or decision by the City, there was no adverse employment decision taken against Plaintiff. And, she has not alleged, and there are no facts showing, that her resignation was a constructive discharge. *See generally Knappenberger v. City of Phoenix*, 566 F.3d 936, 940 (9th Cir. 2009) (discussing constructive discharge as an adverse employment action to support employee's § 1983 action against employer); *Bauer v. Bd. of Supervisors*, 44 F. App'x 194, 199 (9th Cir. 2002) (noting that constructive discharge is an adverse employment action for the purposes of Title VII). Therefore, Plaintiff's separation from Turner PD cannot form a basis for Plaintiff's First Amendment and ORS § 659A.203 claims.

Plaintiff has not demonstrated otherwise. While she is correct that she was initially terminated from her employment on July 31, 2017, the undisputed fact remains that the City rescinded the termination and accepted Plaintiff's voluntary resignation in lieu of discharge following settlement negotiations with her union. *Campbell MSJ Dec. Ex. 13.* As Plaintiff's resignation legally supplanted her termination, her resignation is the relevant separation event in this case. In light of the fact that Plaintiff resigned voluntarily, the City's acceptance of her resignation did not chill her protected speech or discourage her from disclosing information protected by ORS § 659A.203. Everything about the resignation was agreed upon through arm's-length settlement negotiations. Therefore, Plaintiff's separation from the City was not an adverse employment action.

Moreover, to the extent Plaintiff asserts that Taylor's communications with other law enforcement agencies were adverse employment actions that prevented her from securing a job elsewhere, she has misconstrued the facts underlying such communications. The undisputed facts show that, when Taylor contacted Chief Ferraris of the Woodburn Police Department ("Woodburn PD") following his discovery of significant discrepancies between Plaintiff's MDT logs and her timesheets, he did so to ask for guidance to investigate Plaintiff's time reporting—he had no idea that Plaintiff had applied to work at Woodburn PD. Taylor 3/7/19 Depo 82:23-84:9,102:1-8; Ferraris Depo 18:24-19:16, 23:11-25, 24:10-20. The conversation was limited to investigative guidance from one police chief to another; Taylor did not negatively advise Chief Ferraris on Plaintiff's application for employment. *Id.*

**HELTZEL WILLIAMS PC**
**P.O. BOX 1048 ■ SALEM, OREGON 97308-1048**
**TELEPHONE (503) 585-4422 ■FACSIMILE (503) 370-4302**

Similarly, Taylor contacted Sheriff Myers of the Marion County Sheriff's Office to verify whether Plaintiff had violated her Turner PD home duty assignment by going to the Marion County Sheriff's Office for a job interview during the time she was assigned to Turner PD home duty. Taylor 3/7/19 Depo 166:7-167:4. Taylor did not contact Sheriff Myers to interfere with Plaintiff's job prospects at the Marion County Sheriff's Office and made no statements to that effect during the conversation with Sheriff Myers. Taylor 3/7/19 Depo 166:7-167:4. Overall, these facts do not evidence any adverse employment actions by and through Taylor's communications with other law enforcement agencies. At no point did he take deliberate action to prevent Plaintiff from securing a job elsewhere or otherwise stain her character.

For these reasons, liability under Plaintiff's First Amendment and ORS § 659A.203 claims, if any, must be based solely on Taylor's actions preceding Plaintiff's separation from Turner PD. Her separation, as a voluntarily negotiated resignation, cannot support her claims as a matter of law.

### 2. First Amendment Claim (First Claim for Relief)

#### A. Plaintiff has failed to identify specific facts that could establish a *prima facie* case of First Amendment retaliation.

A First Amendment retaliation plaintiff bears the burden of stating a *prima facie* case by showing that (1) she engaged in protected speech by speaking on a matter of public concern in her capacity as a private citizen, and (2) her protected speech was a substantial or motivating factor in an adverse employment action. *Eng*, 552 F.3d 1070.

**HELTZEL WILLIAMS PC**
**P.O. BOX 1048 ■ SALEM, OREGON 97308-1048**
**TELEPHONE (503) 585-4422 ■FACSIMILE (503) 370-4302**

Plaintiff has failed to point to evidence which, even construed in the light most favorable to her, could satisfy these elements under established law.

### a. Plaintiff has not pointed to facts showing that she "spoke."

The only material facts that bear on the fundamental inquiry as to whether Plaintiff "spoke" for First Amendment purposes are the following:

1) Plaintiff kept private notes in a written log (White Depo 69:10-25, 78:12-15);

2) Plaintiff's written log was her personal possession that she kept in her desk at work (White Depo 78:12-15);

3) Plaintiff's written log was involuntarily disclosed to Taylor (Compl. ¶ 12, White Depo 68:1-2, 65:16-66:9);

4) Plaintiff never told Taylor or any other City employee that she had been maintaining the written log (White Depo 70:23-71:6);

5) Plaintiff never discussed the detailed content of her written log with Taylor or any other City employee (White Depo 71:14-18).

Plaintiff does not dispute any of these facts. Pl. Resp. at 2, 10, 12. Given these undisputed material facts, her reliance on *Terrell v. Univ. of Texas Sys. Police*, *Sullivan v. Ramirez*, *Verri v. Nanna*, and *Connor v. Clinton County Prison* to classify her written log as "speech" is misguided.

First, the *Terrell* and *Verri* courts did not decide whether the employee-plaintiffs' personal diaries constituted First Amendment "speech." In both cases, the plaintiffs were government employees who kept private diaries critical of their supervisors. *Terrell v. Univ. of Texas Sys. Police*, 792 F.2d 1360 (5th Cir. 1986); *Verri v. Nanna*, 972 F. Supp. 773 (S.D.N.Y. 1997). After each plaintiff suffered an adverse employment action

**HELTZEL WILLIAMS PC**
**P.O. BOX 1048 ▪ SALEM, OREGON 97308-1048**
**TELEPHONE (503) 585-4422 ▪FACSIMILE (503) 370-4302**

following the involuntary disclosure of his private journal to his supervisor, he brought a First Amendment retaliation claim against his government employer. *Id.* In *Terrell*, the Fifth Circuit Court of Appeals assumed without deciding that an employee's personal notebook can be considered "speech," then went on to hold that the plaintiff's private notebook could not support his First Amendment retaliation claim because the facts made clear that (1) the plaintiff spoke as an employee, and (2) the notebook did not address matters of public concern. *Terrell*, 792 F.2d 1362–63. Similarly, in *Verri*, the U.S. District Court for the Southern District of New York (citing and agreeing with *Terrell*) assumed without deciding that the plaintiff's private diary was "speech," then held that the diary could not support the plaintiff's First Amendment retaliation claim because the content of his diary showed that the speech therein did not implicate any public concern. *Verri*, 972 F. Supp. 786-87.

Neither *Terrell* nor *Verri* permits a finding that Plaintiff's written log constituted "speech." Simply, by *assuming* that the employee-plaintiffs' private journals were speech for First Amendment purposes, neither court actually decided that question. There is no factual analysis in either opinion. Thus, the facts of this case cannot support Plaintiff's position that her written log was "speech" under *Terrell* and *Verri*.

Plaintiff's position that her written log was "speech" under *Sullivan* and *Connor* is similarly flawed. Rather than provide any analysis analogizing the facts of this case to those in *Sullivan* and *Connor*, Plaintiff makes the sweeping assertion that (1) because the *Sullivan* and *Connor* courts held that private writings involuntarily disclosed are speech, and (2) the facts of this case are "squarely on point" with *Sullivan* and *Connor*, she spoke

2/18/2020/ADC:mom/W:\clients\CI16661\020\00508816.DOCX

**HELTZEL WILLIAMS PC**
**P.O. BOX 1048 ■ SALEM, OREGON 97308-1048**
**TELEPHONE (503) 585-4422 ■FACSIMILE (503) 370-4302**

for First Amendment purposes. *See* Pl. Resp. at 10-11. This reasoning does little for

Plaintiff's position on summary judgment because it is highly conclusory. Notably,

Plaintiff ignores the specific facts that led the *Sullivan* court to conclude that the

employee-plaintiffs' personal notes constituted speech. As explained in Taylor's Motion

for Summary Judgment, the *Sullivan* facts are distinct from the undisputed facts of this

case, and therefore, Plaintiff's written log cannot constitute speech under the *Sullivan*

court's reasoning. Taylor MSJ at 12-15; *Sullivan v. Ramirez*, 360 F.3d 692 (7th Cir.

2004). Plaintiff's has not shown otherwise. Hence, she has failed to point to specific

facts showing that her written log constituted "speech" under *Sullivan*.

Plaintiff has failed to point to evidence showing that her written log was "speech"

under *Connor*, as well. In *Connor*, the United States District Court for the Middle

District of Pennsylvania held that First Amendment "speech" occurred when the

employee-plaintiff's supervisor discovered and read the employee-plaintiff's secret

journal because that event resulted in a "communication." *Connor v. Clinton Cty. Prison*,

963 F. Supp. 442, 446 (M.D. Pa. 1997). While the basic facts of *Connor* are similar to

the facts of this case, Plaintiff has neither discussed those facts nor offered any other

explanation as to why the Court should apply the *Connor* court's "communication"

inquiry to find that speech occurred. The Court should not reward such underdeveloped

briefing on summary judgment. Moreover, the *Connor* court's reasoning was brief and

far less analytical than that of the Seventh Circuit in *Sullivan*. Thus, even if Plaintiff's

Response contained some developed discussion advocating the application of *Connor* to

this case, the *Sullivan* court's reasoning would still carry more weight in determining whether Plaintiff's written log was speech.

Overall, Plaintiff has failed to point to any facts demonstrating the existence of genuine issues bearing on the fundamental occurrence of speech to support her First Amendment retaliation claim. Under the undisputed facts and the weight of established authority, Plaintiff did not speak for First Amendment purposes. Her First Amendment claim therefore fails at the outset.

### b. Plaintiff has not pointed to facts showing that her "speech" addressed matters of public concern.

To determine whether a plaintiff spoke on a matter of public concern, courts look to the content, form, and context of a given statement, as revealed by the whole record. *Greisen v. Hanken*, 925 F.3d 1097, 1109 (9th Cir. 2019) (citing *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). Though the content of speech is generally the most important factor of the public concern inquiry, courts cannot overlook the speech's form and context. *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1069 (9th Cir. 2012); *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002). All factors are relevant and must be given due consideration in light of the whole record. *See id*.

Plaintiff has misapplied this standard by focusing solely on facts surrounding the content of her written log and construing then in isolation, irrespective of the whole record. Furthermore, Plaintiff's discussion on the form and context of her written log is immaterial and not supported by the record. Consequently, she has not pointed to sufficient facts showing that her written log addressed matters of public concern.

**HELTZEL WILLIAMS PC**
**P.O. BOX 1048 ■ SALEM, OREGON 97308-1048**
**TELEPHONE (503) 585-4422 ■FACSIMILE (503) 370-4302**

First, the facts Plaintiff relies on bearing on the content of her written log do not show that it addressed matters of public concern. She argues that, given Turner PD's multiple serious policy violations documented in her written log (*e.g.*, failure to investigate allegations of sexual assault; failure to investigate DHS reports in a timely manner), the log addressed matters of public concern. Since an employee's expression is fairly characterized as addressing a matter of public concern when it relates to an issue of political, social, or other concern to the community, as distinct from a mere personal grievance, Plaintiff's position appears reasonable on its face. *Gilbrook v. City of Westminster*, 177 F.3d 839, 866 (9th Cir. 1999). However, the content of Plaintiff's written log must be reviewed in light of the whole record. *See Connick*, 461 U.S. 147-48. Plaintiff's focus on the isolated content of the written log, therefore, is not persuasive.

A thorough review of the record reveals that Plaintiff was an opinionated employee who had multiple personal disagreements with Taylor before she left Turner PD. Her disagreements, all based on matters of opinion, were related Taylor's management of Turner PD. For instance, in January 2017, Plaintiff emailed Taylor expressing her disapproval of his "filthy" police vehicle. Compl. ¶ 20; *Campbell MSJ Dec. Ex. 3*. And in July 2016, Taylor emailed Plaintiff explaining that it was inappropriate for her to email all City employees regarding her suggestion to install an electronic entry system at the police department. White Depo 52:22-54:19; *Campbell MSJ Dec. Ex. 2*. Considering the nature of these disagreements together with the content of Plaintiff's written log makes clear that her disagreements with Taylor spurred her decision to document perceived policy violations in the written log, all of which were

"specific to [Taylor] and not just the [police] department as a whole." White Depo 69:17-21. Hence, Plaintiff's perceived policy violations were the product of workplace grievances. Workplace grievances do not implicate the public concern so as to warrant First Amendment protection. *E.g.*, *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (citing *McKinley v. City of Eloy*, 705 F.2d 1110 (9th Cir.1983)). As the record shows that Plaintiff's personal disagreements with Taylor formed the basis of her written log, it follows that its content was not a matter of public concern. For these reasons, Plaintiff's focus on the isolated content of the written log misses the mark. Viewed in light of the whole record, the log's content was the product of petty workplace grievances involving Taylor, and as such, is not protected by the First Amendment.

Second, Plaintiff has not shown specific facts demonstrating that the form and context of the written log elevate it to a level of public concern. Critically, she does not dispute that the written log was private and involuntarily disclosed to Taylor. Pl. Resp. at 12. This is dispositive on the public concern inquiry under Plaintiff's cited cases. In both *Terrell* and *Verri*, the employee-plaintiff maintained a private journal that was disclosed to his government employer against his will. *Terrell*, 792 F.2d 1363; *Verri*, 972 F. Supp. 786. In light of such private form and context, each court held that the private journal at issue did not address matters of public concern because the plaintiff did not intend to communicate the contents of the journal with anyone. *Id*. This reasoning is consistent with Ninth Circuit precedent establishing that, in reviewing form and context, courts look to the employee's motivation and the audience chosen for the speech. *Greisen*, 925 F.3d 1109; *Gilbrook*, 177 F.3d 866. Generally, a limited audience weighs against a finding of

**HELTZEL WILLIAMS PC**
**P.O. BOX 1048 ■ SALEM, OREGON 97308-1048**
**TELEPHONE (503) 585-4422 ■FACSIMILE (503) 370-4302**

public concern. *Desrochers v. City of San Bernardino*, 572 F.3d 703, 714 (9th Cir. 2009).

Given the undisputed fact that Plaintiff's log was private and involuntarily disclosed, it did not implicate matters of public concern under these authorities. Unsurprisingly, Plaintiff attempts to avoid this result by arguing that she would have sought to share the content of the written log in a "broader public forum for her speech" if Taylor had not destroyed the written log and placed her on leave. Pl. Resp. at 12. This point is unavailing because there are no facts in the record showing that Plaintiff was motivated to broadcast her perceived policy violations to the public at large. The only evidence revealing Plaintiff's purpose for maintaining the written log is found in her deposition, during which she testified that she maintained the log to record her perceived policy violations at Turner PD and share them with the City Administrator (Mr. Sawyer) and Taylor during her anticipated exit interview. White Depo 70:1-12. Thus, Plaintiff's argument on this front is hypothetical and not based in fact. Therefore, she has not demonstrated any fact issues regarding her intended audience for the written log. Ultimately, given the undisputed facts regarding Plaintiff's motive for maintaining the log and her intended audience, the log did not implicate the public concern.

Plaintiff further attempts to demonstrate some degree of public concern by noting that, prior to Taylor's discovery of her written log, she "had brought up multiple issues verbally with [Taylor] and . . . other cops . . . just to run it by [them] and get [their] opinions on how other agencies do it and . . . what is standard and what is best practice." Pl. Resp. at 12; White Depo 71:3-11. These facts are immaterial to the motivation and

2/18/2020/ADC:mom/W:\clients\CI16661\020\00508816.DOCX

**HELTZEL WILLIAMS PC**
P.O. BOX 1048 ■ SALEM, OREGON 97308-1048
TELEPHONE (503) 585-4422 ■FACSIMILE (503) 370-4302

audience components of the public concern query because they do not involve Plaintiff's written log. That is, when Plaintiff mentioned "multiple issues" to Taylor and police officers employed by other cities, she did not tell them that she was keeping a log of her perceived issues and she did not state that Turner PD was committing policy violations. Rather, she asked general questions relating to her perceived issues to help herself gain a better understanding of Turner PD's law enforcement standards. Therefore, the fact that Plaintiff "brought up multiple issues" to Taylor and officers from other agencies does not show that she had any motive or desire to make the contents of her written log known to the public. Plaintiff's deposition testimony showing her intent to share the content of her log solely with Taylor and Mr. Sawyer during her exit interview affirms this conclusion. White Depo 70:1-12, 71:14-18.

Ultimately, Plaintiff has failed to show any facts that could satisfy the "public concern" element of her First Amendment retaliation claim. The undisputed facts regarding the content, form, and context of her written log, viewed in light of the whole record, show that it did not implicate the public concern as a matter of law.

> **c.     Plaintiff has not pointed to facts showing she spoke as a private citizen.**

The facts proffered by Plaintiff on the "private citizen" element of her First Amendment retaliation claim do not satisfy her burden. *See generally Eng*, 552 F.3d 1070 (setting forth plaintiff's burden on First Amendment retaliation claim). "[S]tatements are made in the speaker's capacity as citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of

2/18/2020/ADC:mom/W:\clients\CI16661\020\00508816.DOCX

**HELTZEL WILLIAMS PC**
**P.O. BOX 1048 ▪ SALEM, OREGON 97308-1048**
**TELEPHONE (503) 585-4422 ▪FACSIMILE (503) 370-4302**

performing the tasks the employee was paid to perform." *Greisen*, 925 F.3d 1111 (citing

*Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1127 n. 2 (9th Cir. 2008).

The determination of whether a public employee's speech was spoken in her capacity as a

public employee or a private citizen presents a mixed question of fact and law. *Posey*,

546 F.3d 1129. Thus, the court must "independently ... evaluate the ultimate

constitutional significance of the facts as found." *Greisen*, 925 F.3d 1111 (citing *Posey*,

546 F.3d 1129).

To support her position that she spoke as a private citizen, Plaintiff first

emphasizes the fact that she was reprimanded by Taylor for emailing all City employees

regarding her suggestion to install an electronic entry system at the police department in

July 2016. *See* White Depo 52:22-54:19. While this fact reasonably indicates that

notifying all City employees of her security concerns for the police department was not

part of Plaintiff's job duties, it does not show that communicating such security concerns

solely with Taylor and Mr. Sawyer was beyond Plaintiff's job duties.

It is important to remember that when Plaintiff emailed Mr. Sawyer in January

2016 suggesting that the City replace the deadbolt on the entrance door to the police

station with an electronic entry system, both Mr. Sawyer and Taylor reacted well, and

discussed the possibility of installing an electronic entry system in a series of emails.

*Campbell MSJ Dec. Ex. 1.* Comparing this instance (an undisputed fact) to Plaintiff's

City-wide July 2016 email shows that raising security and other related policy concerns

directly with her superiors (*i.e.*, Taylor and Mr. Sawyer) was acceptable and part of her

job duties, whereas sharing such concerns with the rest of the City staff was not. Since

HELTZEL WILLIAMS PC
P.O. BOX 1048 ■ SALEM, OREGON 97308-1048
TELEPHONE (503) 585-4422 ■FACSIMILE (503) 370-4302

the undisputed facts show that (1) Plaintiff's written log contained her notes regarding policy violations and other departmental concerns (White Depo 72:21-73:12), and (2) Plaintiff intended to communicate the contents of her written log solely with Mr. Sawyer and Taylor during her exit interview (White Depo 70:1-12; 71:14-18), it follows that any speech contained in the written log was made pursuant to Plaintiff's job duties as a City of Turner police officer. Therefore, to the extent that she spoke through the written log, that speech was made in her capacity as a public employee. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) (holding that when a public employee makes a statement pursuant to her official duties, the employee does not speak as a citizen).

This conclusion is consistent with *Dahlia v. Rodriguez*, in which the Ninth Circuit Court of Appeals established that a public employee speaks in her role as a public employee if she confines her communications to her chain of command, speaks about her job duties, and does not speak in contravention to a supervisor's order. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1074-75 (9th Cir. 2013). As evidenced in part by Mr. Sawyer's and Taylor's positive reactions to her January 2016 email, Plaintiff acted within her job's boundaries when she maintained the written log because (1) she planned to communicate its contents within her chain of command, (2) the written log addressed topics related to her police duties, and (3) she did not maintain the log in contravention of Taylor's or Mr. Sawyer's orders. Therefore, under *Dahlia*, any speech in Plaintiff's written log was made in her capacity as a public employee.

Plaintiff attempts to create fact issues in this area by suggesting that she "retained some intention of wider disclosure" for the written log. Pl. Resp. at 13. However, as

15 – DEFENDANT DON TAYLOR'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

explained earlier, there are no facts in the record showing that Plaintiff intended to share the contents of her written log outside of her Turner PD chain of command. Her testimony clearly shows that her sole purpose in maintaining the written log was to share her perceived policy violations with Mr. Sawyer and Taylor during her exit interview. White Depo 70:1-12. Therefore, Plaintiff has failed to point to any evidence showing the existence of genuine fact issues regarding the intended audience for the written log. The undisputed facts show that Plaintiff planned to reveal its contents to Mr. Sawyer and Taylor alone, thereby supporting a finding that Plaintiff maintained the log as a public employee.

Lastly, Plaintiff contends that, because she was not employed "to document misconduct, corruption, and illegality on the part of the chief of police," she was not fulfilling her official job responsibilities when maintaining the written log. Pl. Resp. at 13. "Whether an employee is acting under an official duty is critical to the [First Amendment] protection analysis." *Courtney v. Oregon State Police*, 349 F. App'x 208, 210 (9th Cir. 2009). Even if Plaintiff had no duty to document her personal observations of Turner PD's policy violations and security and management issues, as a police officer, she *did* have an official duty to report any misconduct within the department. *See id.* (First Amendment retaliation plaintiff conceded that, as a police officer, he had an official duty to report any misconduct); *Eberz v. Oregon Department of State Police,* Civ. No. CV–06–641–TC, 2008 WL 697419, at *11 (D. Or. March 14, 2008) (plaintiff state police officer testified that his job duties included the duty to report misconduct within Oregon State Police and declared that his duty extended to reporting misconduct to the

2/18/2020/ADC:mom/W:\clients\CI16661\020\00508816.DOCX

HELTZEL WILLIAMS PC
P.O. BOX 1048 ■ SALEM, OREGON 97308-1048
TELEPHONE (503) 585-4422 ■FACSIMILE (503) 370-4302

supervisory level). Therefore, in light of the fact that Plaintiff planned to report the contents of her written log to Taylor and Mr. Sawyer, she was acting under her official police duties in maintaining the log.

For the foregoing reasons, Plaintiff has not pointed to sufficient evidence to establish a *prima facie* case of First Amendment retaliation. She cannot meet her burden on any element, and summary judgment should be granted for Taylor.

> **B. Taylor has met his burden to avoid First Amendment retaliation liability and Plaintiff has failed to identify facts that could show otherwise.**

If a First Amendment retaliation plaintiff meets her burden to establish a *prima facie* case, the burden of production shifts to the defendant to show either (1) that it had an adequate justification for treating the employee differently from other members of the general public; or (2) that it would have taken the adverse employment action even absent the protected speech—in other words, by showing that the employee's protected speech was not a but-for cause of the adverse employment action. *Greisen*, 925 F.3d 1108; *Eng*, 552 F.3d 1070. Satisfying either one allows the defendant to avoid liability. *See Eng* at 1072 (explaining that a defendant can avoid liability alternatively by satisfying either question).

Taylor has met his burden of production to show that any speech on Plaintiff's part was not the but-for cause of any adverse employment action. *Eng* at 1072. As discussed in Taylor's Motion for Summary Judgment, the undisputed factual timeline shows that Plaintiff was investigated and ultimately discharged from Turner PD for legitimate reasons: because Taylor discovered evidence showing that she had been repeatedly

2/18/2020/ADC:mom/W:\clients\CI16661\020\00508816.DOCX
**HELTZEL WILLIAMS PC**
**P.O. BOX 1048 ■ SALEM, OREGON 97308-1048**
**TELEPHONE (503) 585-4422 ■FACSIMILE (503) 370-4302**

falsifying her time sheets. To summarize, the critical facts show that Taylor initiated the investigation _after_ he discovered evidence of Plaintiff's false time reporting and _before_ he discovered Plaintiff's written log. Thus, the investigation on Plaintiff's time reporting, as well as her her ultimate discharge, stemmed from Taylor's discovery of evidence showing that she had been repeatedly falsifying time sheets. Therefore, even if the content of her written log was protected speech, and even if Taylor discovered and reviewed the log as alleged, he faces no liability under _Eng_ because he would have initiated the investigation on Plaintiff's time reporting even if the written log had never come to his attention.

Plaintiff attempts to create fact issues on this outcome by asserting that any discrepancies in her timesheets reflected Taylor's standard practice of allowing officers to "flex" their time on their timesheets. Pl. Resp. 17. She reasons that, because there are facts indicating that Taylor was aware of the flextime policy, his discovery of her written log was the actual but-for cause of his decision to initiate the investigation on her time reporting, and therefore, there are issues of fact precluding his ability to avoid liability under _Eng_. This position is unavailing for several reasons.

First, the undisputed factual timeline renders all facts relating to Turner PD's flextime policies immaterial. The undisputed facts show that the following events happened in the following order: (1) First: Taylor discovered discrepancies between Plaintiff's timesheets and her MDT logs, (2) Next: Taylor initiated the external investigation on Plaintiff's time reporting, and (3) Last: Taylor discovered and reviewed Plaintiff's written log. _See_ Taylor MSJ at 2-5. Under this timeline, Taylor's discovery of

HELTZEL WILLIAMS PC
P.O. BOX 1048 ■ SALEM, OREGON 97308-1048
TELEPHONE (503) 585-4422 ■FACSIMILE (503) 370-4302

discrepancies between Plaintiff's MDT logs and her timesheets could not have been a pretext for some desire to retaliate against her due to her speech because, at the time he initiated the investigation on her time reporting, he had not discovered her written log. Summarily, it would have been impossible for him to retaliate against her for something he did not have knowledge of at the time of the alleged retaliatory action. Thus, Taylor's supposed knowledge of Plaintiff's use of flex time on her timesheets is immaterial to the initial adverse employment decision of initiating the investigation on her time reporting. Any evidence supporting such knowledge, therefore, cannot overcome Taylor's showing that he would have initiated the investigation on Plaintiff's time reporting even absent his discovery of her written log.

Plaintiff has not pointed to evidence that could demonstrate the existence of factual issues surrounding the timeline summarized above. While she reasons that Taylor must have discovered the written log and torn it up before he initiated the time reporting investigation, her reasoning is purely conjectural. She points to no evidence supporting her proffered timeline of events. A nonmoving party cannot defeat summary judgment with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (conclusory allegations unsupported by factual material are insufficient to defeat a motion for summary judgment). Therefore, Plaintiff has failed to raise any factual issues surrounding Taylor's showing that he initiated the investigation for legitimate reasons, and would have done so even absent her protected speech. Thus,

notwithstanding Plaintiff's ability to state a *prima facie* case of First Amendment retaliation, Taylor has met his burden to avoid First Amendment liability.

### 3. State Law Claim (Second Claim for Relief)

**A. Plaintiff has failed to identify specific facts that could establish a *prima facie* case of unlawful retaliation under the Oregon whistleblower statute.**

To state a *prima facie* case of unlawful whistleblower retaliation under ORS § 659A.203, a plaintiff must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment decision, and (3) there was a causal link between the protected activity and the adverse employment decision." *Lindsey*, 140 F. Supp. 3d1091.

Plaintiff has failed to point to evidence demonstrating the existence of triable issues of fact on any of these *prima facie* elements.

**a. Plaintiff has not pointed to facts showing that she engaged in protected activity.**

Taylor is entitled to judgment as a matter of law on Plaintiff's ORS § 659A.203 claim because, in light of established authority, the undisputed facts show that Plaintiff did not engage in "protected activity" within the meaning of the statute.

Under Oregon law, for a public employee's disclosure to qualify as "protected activity" within ORS § 659A.203, the disclosure (a) must be made to someone other than the wrongdoer; or (b) must be made to the wrongdoer with the threat of revealing the wrongdoer's condut to someone else. *See Lindsey*, 140 F. Supp. 3d 1091 (holding that the plaintiff-employee's report to his manager regarding the manager's unlawful conduct was not a "disclosure" under ORS § 659A.203 because the plaintiff-employee made the

**HELTZEL WILLIAMS PC**
**P.O. BOX 1048 ■ SALEM, OREGON 97308-1048**
**TELEPHONE (503) 585-4422 ■FACSIMILE (503) 370-4302**

report solely to the manager without threatening to reveal the manager's conduct to anyone else); *See Bjurstrom v. Oregon Lottery*, 202 Or. App. 162, 169 (2005) (explaining that the term "disclose" means "to open up to general knowledge").

Given this standard, the facts material to the protected activity inquiry are the following: (1) Taylor was the only wrongdoer implicated in Plaintiff's written log (White Depo 69:10-21), and (2) Plaintiff's written log did not contain language threatening to reveal Taylor's policy violations to anyone (*See* White Depo 69:7-70:6, 71:14-18). Plaintiff does not dispute these facts. Pl. Resp. at 23. Instead, she disputes the established authority governing the "protected activity" analysis under ORS § 659A.203 and asks the Court to abandon Oregon precedent. Noting that the Federal Whistleblower Protection Act (WPA) was amended in 2012 to bring disclosures to wrongdoers within its protections, she reasons that, because Oregon courts have looked to federal interpretation of the WPA for guidance in determining the meaning of protected disclosures under ORS § 659A.203, the Court should expand Oregon's whistleblower protections to protect disclosures made to wrongdoers.

This line of reasoning is flawed. First, Plaintiff offers no summary or analysis of the WPA's legislative history, or its language which purportedly brings disclosures to wrongdoers within the protections of the Act. She does not even cite to the specific relevant provision within the WPA. Consequently, she leaves both Taylor and the Court guessing at the provision she has taken it upon herself to interpret. Second, Plaintiff's argument ignores recent case law promulgated by courts in this district recognizing and affirming Oregon courts' pre-2012 interpretations of "protected activity" for purposes of

**HELTZEL WILLIAMS PC**
P.O. BOX 1048 ▪ SALEM, OREGON 97308-1048
TELEPHONE (503) 585-4422 ▪FACSIMILE (503) 370-4302

ORS § 659A.203 claims. *See Barrier v. City of Dalles*, No. 3:18-CV-1084-AC, 2019 WL

2707519, at *8 (D. Or. June 4, 2019), *report and recommendation adopted sub nom.*

*Barrier v. City of the Dalles*, No. 3:18-CV-01084-AC, 2019 WL 2648808 (D. Or. June

27, 2019) (citing *Shultz*, No. 08–CV–886–BR, 2009 WL 1476689, at *13 (noting that a

disclosure is protected by the statute only if it is made to a person who was previously

unaware of the information, meaning someone in a supervisory position, other than

the wrongdoer himself)).

Third, Plaintiff does not consider the differences in statutory language between the

WPA and ORS § 659A.203. While she is correct that Oregon courts have applied federal

standards governing disclosures under the WPA to interpret Oregon's ORS § 659A.203,

she ignores the fact that Oregon courts have only done so to the extent that the Oregon

statute and the WPA are similarly-worded. *Shultz v. Multnomah Cty.*, No. 08-CV-886-

BR, 2009 WL 1476689, at *13 (D. Or. May 27, 2009) (noting that, in the absence of

further guidance, the court applies the standards governing "disclosures" under the

similarly-worded WPA). ORS § 659A.203 has never contained language expressly

bringing disclosures to wrongdoers within its protections. Therefore, even if the WPA's

2012 amendments include express language to that effect, it would be entirely

inappropriate for the Court to look to that language for guidance in determining whether

Plaintiff has stated a *prima facie* case under ORS § 659A.203. If the Oregon legislature

wanted to afford such protections to Oregon public employees, it would do so through the

legislative process, just as the U.S. Congress has purportedly done in the WPA context.

As the Oregon legislature has taken no such action, the Court cannot read ORS §

2/18/2020/ADC:mom/W:\clients\CI16661\020\00508816.DOCX
**HELTZEL WILLIAMS PC**
**P.O. BOX 1048 ■ SALEM, OREGON 97308-1048**
**TELEPHONE (503) 585-4422 ■FACSIMILE (503) 370-4302**

659A.203 to afford such expanded protections. Oregon precedent is therefore binding. For these reasons, under the undisputed facts, Plaintiff did not engage in "protected activity" within the meaning of ORS § 659A.203.

The remainder of Plaintiff's presentation on this point is equally unpersuasive. Rather than demonstrate the existence of triable issues of fact, she offers additional argument on how ORS § 659A.203 should be read and applied. Not only are her arguments underdeveloped and unsupported by citation to controlling authority—they contradict established case law that squarely addresses the questions at hand. As noted above, that case law clearly defines the meaning of "protected activity" within the statute. *See generally Lindsey*, 140 F. Supp. 3d 1091; *Bjurstrom v. Oregon Lottery*, 202 Or. App. 162, 169 (2005). And as explained above, given the undisputed facts of this case, any disclosure achieved through Plaintiff's written log does not qualify as such.

For these reasons, Plaintiff has not pointed to evidence showing that she engaged in protected activity within the meaning of ORS § 659A.203. Thus, she cannot establish a *prima facie* case of whistleblower retaliation as a matter of law.

> **b.      Plaintiff has not pointed to facts showing a causal link between any protected activity and an adverse employment decision.**

Next, Plaintiff has failed to establish the existence of fact issues on the causal link component of her ORS § 659A.203 claim.

Most notably, she has misconstrued controlling procedural authority. Her reliance on *Williams v. Freightliner, LLC*, 196 Or. App. 83, 93 (2004) for the proposition that a summary judgment plaintiff's "burden in an employment discrimination case is so

HELTZEL WILLIAMS PC
P.O. BOX 1048 ■ SALEM, OREGON 97308-1048
TELEPHONE (503) 585-4422 ■FACSIMILE (503) 370-4302

minimal that it is virtually impervious to a motion based on evidentiary insufficiency" is

misplaced because *Williams* is an Oregon state case, not a federal one. Accordingly, any

iterations of summary judgment burdens expressed therein do not apply to non-moving

summary judgment plaintiffs in federal court, even those with pendent claims brought

pursuant to Oregon state law. Instead, federal courts apply the familiar FRCP 56

standard. Under that standard, after the moving party proves the absence of genuine

issues of material fact, the burden shifts to the non-moving party to go beyond the

pleadings and point to specific facts demonstrating the existence of genuine issues for

trial. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "The burden is

not a light one. The non-moving party must show more than the mere existence of a

scintilla of evidence." *Id.* Hence, the *Williams* "minimal" summary judgment burden

does not apply to plaintiff. Her attempt to invoke such a light burden therefore fails.

The remainder of Plaintiff's argument is weak, as it ignores the high causation bar

established by courts in this district for ORS § 659A.203 claims. The causal link inquiry

involves a "but-for" analysis: "To prove a causal link between the allegedly protected

activity and the adverse employment action, an employee 'must show by a preponderance

of the evidence that engaging in the protected activity was one of the reasons for [the

adverse employment action] and that but for such activity [the employee] would not have

been [subject to the adverse employment action]." *Whitley v. City of Portland*, 654 F.

Supp. 2d 1194, 1215 (D. Or. 2009) (quoting *Ruggles v. Cal. Polytechnic St. Univ.*, 797

F.2d 782, 785 (9th Cir.1986)). As discussed in Taylor's Motion for Summary Judgment,

the undisputed facts show that Taylor's March 13, 2017 discovery of discrepancies

**HELTZEL WILLIAMS PC**
**P.O. BOX 1048 ■ SALEM, OREGON 97308-1048**
**TELEPHONE (503) 585-4422 ■FACSIMILE (503) 370-4302**

between Plaintiff's MDT logs and her timesheets was the root of each adverse employment action underlying Plaintiff's ORS § 659A.203 claim. Thus, even if Plaintiff's written log qualified as ORS § 659A.203 "protected activity," she could not establish a causal link between that protected activity and any adverse employment action because she would have been subjected to adverse employment actions even absent the written log.

Plaintiff has failed to point to facts that could show otherwise. Her speculation on the legitimacy of Salem PD's investigative results does not create fact issues on the causation inquiry because it is just that—speculation. Consequently, it does not demonstrate the existence genuine issues for trial. *See Hernandez*, 343 F.3d 1112 (a nonmoving party cannot defeat summary judgment with unsupported conjecture and conclusory allegations). There are no facts in the record calling into question the legitimacy or independence of Salem PD's investigative results. Likewise, Plaintiff's assertion that "there was a direct causal link between Taylor's discovery of [her] notes and her investigation and termination and a jury could easily so conclude" does not reveal facts sufficient to overcome summary judgment on the causation element of her ORS § 659A.203 claim because it is conclusory and not supported by citation to specific facts. And, even Plaintiff could point to evidence from which a jury could reasonably render such a conclusion, she would still be unable to demonstrate genuine issues for trial on the ORS § 659A.203 causation question because, as explained above, the undisputed factual timeline shows that Taylor's discovery of Plaintiff's inconsistent time entries on March 13, 2017 caused each adverse employment action underlying the claim.

2/18/2020/ADC:mom/W:\clients\CI16661\020\00508816.DOCX
**HELTZEL WILLIAMS PC**
P.O. BOX 1048 ■ SALEM, OREGON 97308-1048
TELEPHONE (503) 585-4422 ■FACSIMILE (503) 370-4302

Overall, the demanding "but for" causation inquiry is fatal to Plaintiff's *prima facie* case under ORS § 659A.203. Even if her written log constituted protected activity under the statute, and even if she could point to evidence from which a jury could find some causal link between the protected activity and an adverse employment action, the undisputed facts overwhelmingly show that all adverse employment actions occurred due to Taylor's discovery of Plaintiff's inconsistent time entries. Thus, Plaintiff cannot satisfy the "but for" inquiry under the undisputed facts, and therefore cannot state a *prima facie* case of whistleblower retaliation under ORS § 659A.203.

> **B.    Taylor has met his burden of production to avoid whistleblower retaliation liability and Plaintiff has failed to identify specific facts that could show otherwise.**

Once an ORS § 659A.203 plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to articulate some legitimate, non-retaliatory reason for the adverse employment decision. *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982); *See generally Carlton v. Marion Cty.*, No. CIV. 03-6202-AA, 2005 WL 1113836, at *4 (D. Or. May 9, 2005) (Oregon district courts apply the Title VII retaliation burden-shifting framework to claims asserted under the Oregon whistleblower statute). The defendant need not prove the absence of retaliatory intent or motive; it simply must produce evidence sufficient to dispel the inference of retaliation raised by the plaintiff. *Id*.

As discussed in Taylor's Motion for Summary Judgment, he can satisfy this burden under the undisputed facts. Simply, the fact that he discovered a pattern of inconsistencies in Plaintiff's time reporting on March 13, 2017, then asked Salem PD to

2/18/2020/ADC:mom/W:\clients\CI16661\020\00508816.DOCX
**HELTZEL WILLIAMS PC**
**P.O. BOX 1048 ■ SALEM, OREGON 97308-1048**
**TELEPHONE (503) 585-4422 ■FACSIMILE (503) 370-4302**

investigate, dispels any potential inference of unlawful retaliation. His suspicion on Plaintiff's dishonest time entries was a legitimate and non-retaliatory reason to initiate the investigation. Plaintiff does not point to any evidence that could show otherwise. (Her Response does not even address this topic). Thus, notwithstanding Plaintiff's ability to state a *prima facie* case of whistleblower retaliation under ORS § 659A.203, Taylor can meet his burden of production.

> ### C. Plaintiff has failed to identify specific facts that could show pretext.

If the defendant to a ORS § 659A.203 retaliation claim meets his burden of production, the burden shifts back to the plaintiff to show that the defendant's stated reason was a pretext for retaliation. *Id*. Plaintiff has not pointed to any specific facts suggesting that Taylor's legitimate, non-retaliatory reason for initiating the investigation and carrying out all subsequent (and related) adverse employment actions was pretextual. Though her Response suggests a general theory that Taylor discovered her written log before he initiated the investigation, there is no evidence supporting that theory. Thus, Plaintiff cannot demonstrate pretext and her ORS § 659A.203 claim therefore fails as a matter of law.

> ### D. Plaintiff has not shown facts sufficient to overcome Taylor's entitlement to immunity from whistleblower liability for his *Brady* communications.

Finally, notwithstanding Plaintiff's inability to state a *prima facie* case, her ORS § 659A.203 claim fails as a matter of law to the extent that it relies on Taylor's *Brady* communications with the Marion County District Attorney ("Marion County DA").

Plaintiff has not pointed to specific facts sufficient to overcome the applicability of discretionary function immunity, or in the alternative, the absolute executive privilege, to Taylor's *Brady* correspondence with the Marion County DA.

As for the applicability of discretionary function immunity, the undisputed facts show that Taylor contacted the Marion County DA in April 2017 to share information on the Plaintiff's dishonest time reporting for *Brady* purposes, as Plaintiff had been subpoenaed to testify in a trial scheduled for May 2017. *Campbell MSJ Dec. Ex. 8.* The undisputed facts also show that, prior to doing so, Taylor assessed the facts bearing on Plaintiff's dishonesty and made the decision to share that information with the Marion County DA in order to fulfill his *Brady* duty of disclosure and implement *Brady* policy objectives. Plaintiff has not pointed to evidence demonstrating the existence of issues of fact on these material points. Therefore, even though Taylor had an official duty to disclose such information to the Marion County DA under *Brady*, the process underlying his disclosure, from beginning to end, shows that the disclosure was ultimately a discretionary decision. *See Timberlake ex rel. Estate of Lyon v. Washington Cty.*, 228 Or. App. 607, 613 (2009) (discretionary functions involve the exercise of discretion in developing or implementing policy objectives through the assessment of costs and benefits, the evaluation of effectiveness of risks, and the choice among competing goals and priorities). Thus, under ORS § 30.265, Taylor is immune from liability for any claim based on the disclosure. *See* ORS § 30.265 (setting forth discretionary function immunity).

**HELTZEL WILLIAMS PC**
**P.O. BOX 1048 ∎ SALEM, OREGON 97308-1048**
**TELEPHONE (503) 585-4422 ∎FACSIMILE (503) 370-4302**

Likewise, Plaintiff has not pointed to evidence sufficient to preclude Taylor's alternate theory of immunity on absolute privilege grounds. As explained in Taylor's Motion for Summary Judgment, the absolute privilege immunizes Taylor's *Brady* communications with the Marion County DA from whistleblower liability because Taylor had an official duty to share information bearing on Plaintiff's dishonesty with the Marion County DA. *See Chamberlain v. City of Portland*, 184 Or. App. 487, 491-92 (2002) (the absolute privilege shields state officers from liability for defamatory statements made in the course of their official duties); *Clifford v. City of Clatskanie*, 204 Or. App. 566, 580 (2006) (noting that "when a public officer makes defamatory statements to persons to whom he has no official duty or authority to impart such information, the statements are not privileged"). Though the absolute privilege is traditionally a bar to defamation claims, applying it to bar whistleblower retaliation claims in the context of *Brady* disclosures achieves the same policy goals which underlie its application in the defamation context. *See* Taylor MSJ at 37-38. Therefore, the absolute privilege bars the portion of Plaintiff's ORS § 659A.203 claim based on Taylor's *Brady* disclosure.

Plaintiff's Response does not squarely address this legal outcome. Rather than respond to Taylor's well-reasoned application of the absolute privilege to the *Brady* disclosure, Plaintiff simply argues that the absolute executive privilege applies only to defamation claims. Yet, Plaintiff's characterization of Taylor's *Brady* disclosure as "knowingly false" equates the disclosure to a defamatory statement, and thereby contradicts her position that the absolute privilege cannot apply to Taylor's *Brady*

2/18/2020/ADC:mom/W:\clients\CI16661\020\00508816.DOCX

**HELTZEL WILLIAMS PC**
**P.O. BOX 1048 ■ SALEM, OREGON 97308-1048**
**TELEPHONE (503) 585-4422 ■FACSIMILE (503) 370-4302**

disclosure. And, she does not point to any evidence tending to create issues of fact regarding Taylor's official duty to disclose *Brady* information to the Marion County DA. This fact, therefore, is undisputed. Thus, in light of established policies underlying the absolute privilege in Oregon, the privilege applies to Taylor's *Brady* communications as a matter of law. *See generally Grubb v. Johnson*, 205 Or. 624, 631-32 (1955) (discussing the rationale for the absolute privilege); *See* Taylor MSJ at 37-39.

For these reasons, either under the discretionary function immunity set forth in ORS § 30.265 or under the absolute executive privilege, Taylor is immune from liability on the portion of Plaintiff's ORS § 659A.203 based on his *Brady* communications as a matter of law.

## CONCLUSION

For the foregoing reasons, summary judgment should be granted for Taylor. He has demonstrated the absence of genuine issues of fact on Plaintiff's claims, such that he is entitled to judgment as a matter of law on each. Plaintiff, on the other hand, has failed to point to specific facts showing the existence of genuine issues for trial.

Dated this 18th day of February, 2020.

HELTZEL WILLIAMS P.C.

s/Andrew D. Campbell
Andrew D. Campbell, OSB # 022647
Attorney for Defendant
PO Box 1048
Salem, OR 97308
Phone: (503) 585-4422
Fax: (503) 370-4302
Email: andrew@heltzel.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2020, I served the attached **DEFENDANT DON TAYLOR'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** on:

| | |
|---|---|
| Daniel E. Thenell, OSB No. 971655 | Steven A. Kraemer, OSB No. 882476 |
| Emerson Lenon, OSB No. 123728 | David C. Lewis, OSB No. 953348 |
| Thenell Law Group, P.C. | Kraemer & Lewis |
| 12909 SW 68th Parkway, Suite 290 | P.O. Box 1469 |
| Portland, Oregon 97223 | Lake Oswego, OR 97035 |
| Telephone: (503) 372-6450 | Telephone: (800) 922-2684 |
| Facsimile: (503) 372-6496 | Facsimile: (503) 763-3900 |
| Attorneys for Plaintiff | Attorneys for Defendants Sawyer and City |
| Email: dan@thenelllawgroup.com | Email: skraemer@cisoregon.org |
| Email: emerson@thenelllawgroup.com | Email: dlewis@cisoregon.org |

- ☐ By mailing to said attorney(s) a full and correct copy therefor, contained in a sealed envelope, with postage paid, addressed to said attorney(s) as stated above and deposited in the United States Post Office at Salem, Oregon.
- ☐ By hand delivering to said attorney(s) a true copy thereof.
- ☑ By emailing to said attorney(s) at their above listed email address(es) a true copy thereof.
- ☑ By electronic filing with the District Court's CM/ECF system. The CM/ECF system generated Notice of Electronic Filing constitutes proof of service upon a Filing User in accordance with Fed. R. Civ. P. 5(d).

Dated this 18th day of February, 2020.

HELTZEL WILLIAMS PC

s/Andrew D. Campbell
Andrew D. Campbell, OSB #022647
Attorney for Defendant
PO Box 1048
Salem, OR 97308
Telephone: (503) 585-4422
Facsimile: (503) 370-4302
Email: andrew@heltzel.com

31 – DEFENDANT DON TAYLOR'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
2/18/2020/ADC:mom/W:\clients\CII6661\020\00508816.DOCX

**HELTZEL WILLIAMS PC**
**P.O. BOX 1048 ■ SALEM, OREGON 97308-1048**
**TELEPHONE (503) 585-4422 ■FACSIMILE (503) 370-4302**